ROBERTS v. ATWOOD et ux. (No. 600.)

(Court of Civil Appeals of Texas. El Paso. Oct. 19, 1916.)

1. APPEAL AND ERROR &⟶1011(1)—CONTRACTS—ACTIONS—RECOVERY—RIGHT TO.
Plaintiff, the remote warrantor, undertook to perfect defendants' title to a portion of land; the contract providing that title should be perfected within a reasonable time, that suit to perfect title should be begun within six months and prosecuted with reasonable diligence, and that title should be approved by defendants' attorneys. Defendants' attorneys testified that they did not approve the title offered by plaintiff, and there was testimony denying any waiver of the time limit. Held, that assignments of error that the uncontradicted evidence showed compliance with the requirements of the contract, and a waiver of the time limit, could not be sustained, though it appeared the court found that plaintiff had perfected the title.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3983-3988; Dec. Dig. &⟶1011(1).]

2. CONTRACTS &⟶327(1) — ACTIONS — CONDITION PRECEDENT.
Approval of title by defendants' attorneys being a condition precedent to plaintiff's right to recover under the contract, and the attorneys' disapproval not being alleged or shown to be arbitrary or in bad faith, no recovery can be had.
[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1563-1570; Dec. Dig. &⟶327(1).]

3. CONTRACTS &⟶278(1)—PERFORMANCE.
As the contract recited that defendants' title was imperfect, plaintiff's assignment of error that, as defendants deraigned title through him and a credit had been allowed on account of the imperfection, it was inequitable for them to retain title, cannot be sustained.
[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1207-1213; Dec. Dig. &⟶278(1).]

4. JUDGMENT &⟶251(1)—CONFORMITY TO ISSUES—CONTRACT.
Plaintiff conveyed land by warranty deed to defendants' grantors, who on transferring it

---

&⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to defendants received vendors' lien notes, the last of which provided for a deduction in case title to certain portions was not perfected. The last note passed to plaintiff, and, title not being perfected, he entered into a contract whereby defendants were to pay him the amount of the deduction for perfecting their title. *Held,* that in a suit merely for the agreed price, where the contract made no provision that any subsequently acquired title should not inure to the benefit of defendants, it was improper for the court to find that the subsequently acquired title did not pass under the warranty.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 437; Dec. Dig. ⊂⊃251(1).]

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Action by Ingham S. Roberts against T. J. Atwood and wife. From a judgment, both parties appeal. Judgment affirmed on plaintiff's appeal, and reformed on defendants' appeal.

D. E. Simmons, John B. Warren, and Quitman Finlay, all of Houston, for appellant. Howard & Kendall, of Houston, for appellees.

WALTHALL, J. Ingham S. Roberts brought this suit against T. J. Atwood and Ida L. Atwood, the facts at issue being, substantially: That on the 18th day of February, 1911, he conveyed by warranty deed to Alice Stratmann three acres of land, and including within its metes and bounds a strip of land on the north side of said three-acre tract of the width of 30 feet, and a strip of land along the south side of said three-acre tract of the width of 60 feet. That Alice Stratmann, joined by her husband, by warranty deed, conveyed the same property, including the said two strips of land, to appellees, T. J. and Ida L. Atwood, retaining a vendor's lien, for which, as a part consideration, appellees executed their three notes, aggregating $1,921.50; the notes bearing 8 per cent. interest and providing for attorney's fees. That at the time of the execution of the deed from Alice Stratmann and husband to appellees, objection was made by the attorneys for appellees to the title to said two strips of land. The trade, however, was closed; the entire three acres, including both strips, being conveyed by Alice Stratmann and her husband to appellees, with the agreement in the third note that:

"In the event the record title is not perfected in us (Alice Stratmann and husband) by the time this note is due as to the two strips of land, one 30 feet in width off the north end of the tract herein described, and one 60 feet off the south end thereof, there shall be credited on this note the sum of three hundred and sixty three dollars and twelve cents."

The title to said strips of land had not been perfected when the note became due. Roberts, who had conveyed the land to Alice Stratmann purchased the said third Atwood note. After the maturity of the note, on, to wit, December 1, 1913, the Stratmanns and Roberts executed a release of the vendor's lien against the entire tract of land, includ-

ing the two strips. The release was made upon the payment to the Stratmanns by appellees of the amount of the purchase money less the credit of said $363.12. On the same day (December 1, 1913) appellees entered into a written agreement with appellant, reciting the facts above stated, and the stipulation as to conditional payment of the $363.12. The contract provides: .

"And because of said stipulation and of the fact that the title to said land was not perfected as therein provided for, the credit of $363.12 was, at the maturity of said note, made thereon, and, whereas, the said T. J. Atwood and wife Ida L. Atwood, desire to have their title perfected to all of the lands and premises described in the deed to them from the said Alice Stratmann, and have agreed to give additional time for the perfecting of their title to the two strips of land mentioned in said note, provided that the same is done within a reasonable time and that all possible diligence is exercised in said business by the said Ingham S. Roberts. Now, therefore, in consideration of the premises, we, the said T. J. Atwood and wife, Ida L. Atwood, do hereby agree to pay to the said Ingham S. Roberts the sum of $363.12 (and two years' interest at 8 per cent.) without interest, provided that he perfects the record title and makes good title in us to the 30 feet of land off the north end of said land as described in said note with all possible diligence, and also that he perfects the record title and makes good title in us to the 60 feet of land off the south end of said tract as provided in said note, and within six months from this date institutes all such necessary proceedings and prosecutes the same to final judgment with diligence. In the event he fails to institute such proceedings within six months from this date or to otherwise perfect the title in us to said 60 feet of land, this being the essence thereof, and should within that time, or should subsequently perfect in us the title to said 30 feet strip off the north end, we then or within 30 days thereafter, agree to pay to the said Ingham S. Roberts one-third of said sum of $363.12 (and two years' interest) without interest. When the title to either one or both of said strips is perfected as herein provided for, evidence shall be procured from a competent abstractor and submitted to Sam, Bradley & Fogle for examination and approval, and such sums shall only become due after the approval of such attorneys. It being distinctly understood that in the event the title is not so perfected in said 60 feet strip or legal proceedings instituted within six months from this date that nothing shall be due the said Ingram S. Roberts hereunder, except the one-third of said total consideration that may become due in the event he perfects the title in us to the 30 feet strip off the north end of the land."

The objection to the title to the two strips seems to be that an easement with the right of use for a highway remained in others. Roberts undertook to perfect the title in appellee to the two strips, and in his petition alleged that he had done so within the time and in the manner provided in the contract, and claims that the matter of time was waived by appellees or their attorneys. Appellees deny the waiver of time; assert that, while appellant in a manner undertook to perfect the title to the two strips of land, he failed to perfect the title within the time provided by the contract, and never perfected the titles to the satisfaction of said Sam, Bradley & Fogle; that he never did submit

to said attorneys an abstract of the title showing what he had done towards the perfection of the titles in order that said attorneys might pass upon the same. The pleadings are lengthy, and the issues made will be further stated where it is deemed necessary.

The case was tried without a jury, and the court denied Roberts' claim for a money judgment, and also his alternative claim to recover the two strips of land, but limited the effect of the warranty in Roberts' deed to the Stratmanns, so that the same would not have the effect of passing to appellees any title that Roberts may have acquired after December 1, 1913, the date of the contract with appellees under which he undertook to perfect the title to said two strips of land. There are no findings of fact or conclusions of law found in the record, other than are stated in the judgment.

[1-3] Appellant's first assignment is to the effect that the judgment is contrary to the law and the evidence, in that the uncontradicted evidence showed that appellant had complied with all of the requirements of his contract of December 1, 1913, and had obtained and submitted to Sam, Bradley & Fogle the evidence required by them necessary to perfect the title as claimed by said attorneys to the two strips of land. The second assignment is very similar to the first and complains that the judgment is contrary to the law in that it denies any recovery, on the sole ground that appellant had not complied with the contract of December 1, 1913, within the time required by the terms of the contract when the judgment should have been in view of the uncontradicted evidence that appellant had complied, at the time of the trial; appellant claiming that the matter of time had been waived.

These two assignments will be discussed together. It will be observed that the note, the third note, contained the provision that, in the event the record title was not perfected in the appellees to the two strips of land by the time the note becomes due, there shall be credited on the note the sum of $363.12. The contract of December 1, 1913, after reciting the above provision of the note, recites that: "Because of said stipulation and of the fact that the title was not perfected as therein provided for, the credit of $363.12 was, at the maturity of said note, made thereon"; that appellees desire to have the title perfected, and agree to give additional time to perfect the titles provided same is done within a reasonable time, requiring diligence; that, should the title be perfected to the 30 feet as provided, appellees agreed to pay the $363.12 and two years' interest; and, also, that the title to the 60 feet be perfected. And it seems to contemplate that title to the 60 feet could not be perfected without the institution of proceedings, and provides that such shall be begun within six months from that date and prosecuted with diligence. Still another provision is in the contract having in view the perfecting of the title to the 30 feet, as follows: "Or should subsequently (to the six months) perfect in us the title to the 30-foot strip" appellees agreed to pay one-third of the $363.12. The contract then provides that:

"When the title to either one or both of said strips is perfected as herein provided for, evidence thereof shall be procured from a competent abstractor and submitted to Sam, Bradley & Fogle for examination and approval, and such sums shall only become due after the approval of such attorneys."

Mr. Bradley, of the law firm of Sam, Bradley & Fogle, who seems to have had the matter in hand for that firm, testified on the trial. He said in part:

"I heard Mr. Roberts testify this morning that I had approved this title, and had written Mr. and Mrs. Atwood to come in and settle. I never did write such a letter as he testifies about. I did nothing further with reference to this matter than is disclosed in the opinion of this case. I had no authority to waive anything. * * * I have at all times, in my conversations with Mr. Roberts, insisted on compliance with the original contract, until Prof. and Mrs. Atwood and Mr. Roberts had agreed upon a second contract of 6 months, and I insisted upon a compliance of that contract until Prof. Atwood authorized the extension of 10 days in which to either file suit or comply with our requirements which were in writing. I never at any time waived for Mr. and Mrs. Atwood the performance by Mr. Roberts of any of the conditions contained in that written agreement in reference to perfecting the title or any part of it. I never made any waiver excepting as authorized by Prof. Atwood when I wrote the letter stating that he had agreed to the 10 days' extension; that is, the letter of June 19th. Mr. Roberts had not performed the conditions contained in that agreement and perfected the title up to and including the expiration of the 10 days; what he has done since I do not know. I wasn't interested in anything after the 10 days. At the time we started into this trial the last time there was a deed shown me, but I was not to pass on special instruments; I was to pass on instruments shown by the abstract. I have never approved the title to either of these strips of land."

After testifying at some length as to conversations had with Roberts and examining certain instruments Roberts had secured and presented to him, for examination, and to conversations had with Atwood, and the contents of letters he had written to Atwood which we need not quote here, the witness said, "I can state to you the objections now that I have to this title," and then at some length proceeding to do so, in line with a written objection to the title formerly made.

The point we suggest is that, up to the time of the trial and at the trial, the evidence is not uncontroverted as claimed in the assignment that the law firm of Sam, Bradley & Fogle had approved the Roberts' title to either of the two strips of land.

The judgment of the court recites that:

"It further appearing to the court that the plaintiff did not comply with the contract of date December 1, 1913, as to the title to the two strips of land included within the metes and bounds of the tract hereinbefore described."

It seems quite clear to us, both from the evidence of the witness Bradley, and from

the finding of the court as stated in the portion of the judgment quoted above, that the record does not disclose the fact that "the uncontradicted evidence showed that the plaintiff had complied with all of the requirements of his contract of date, December 1, 1913." The evidence and the judgment disclose that, even on the trial of the case, Sam, Bradley & Fogle refused "to accept the evidence of title tendered by the plaintiff to the two strips of land." The assignments are not based on the sufficiency of the evidence to sustain the court's finding, nor does the record or the judgment itself disclose that appellant was denied recovery "on the sole ground that the plaintiff had not complied with his contract of date, December 1, 1913, within the time required by the terms of said contract," as claimed in the second assignment. True, the trial court finds and recites in the judgment that "it appearing to the court that the plaintiff has obtained the title to said two strips of land at this time," but the contract is the basis of appellant's right of recovery, and states the condition upon which the claim sued upon becomes payable. As said by the court in Moling v. Mahon, 86 S. W. 956, the time never arrived for the payment of the $363.12 and accepting the title, if the construction of the contract be that they were not obligated to do so until the attorneys, Sam, Bradley & Fogle, approved the title. This case, as was the Moling v. Mahon Case, is relieved from any embarrassment connected with a want of good faith on the part of the attorneys in passing upon the title, for there is neither averment nor proof that they acted in the matter arbitrarily or in bad faith. Appellant insists that it is inequitable for the appellees to retain the title to the two strips and not pay the consideration. That assumes that appellees have title. We are not called upon to decide whether appellees have or have not title. The contract of December 1, 1913, stipulates that the title was not perfect at that time, and that appellees desired to have the title perfected, and appellant undertook to do so to the satisfaction of the attorneys named, and it does not appear from the findings of the court in the judgment that they have done so. The assignments are overruled.

The third assignment insists that inasmuch as the evidence shows that appellees deraign title through the Stratmanns and they through appellant, and that appellees have not paid the agreed consideration to either strip of land, plaintiff should recover under his alternative plea for title. What we have said in discussing the preceding assignments has equal application to the third. The assignment states a good proposition of law. It would not be good, however, where it is admitted, as in the contract, that the "title conveyed was imperfect." An imperfect title admits a defense. The parties agreed that the title was defective, and agreed to perfect it

as stated in the contract, and that when perfected an abstract showing a marketable title should be presented to and passed upon by the attorneys named in the contract. The contract stipulates that "such sums shall only become due after the approval of such attorneys." If the title was perfected and presented to the attorneys so agreed, and the attorneys had arbitrarily or in bad faith refused to approve the title, we think appellant then should have recovered. But such averments and facts do not appear. The assignment is overruled.

[4] Appellees present this cross-assignment:

"The court erred in limiting the effect of the warranty deed from the appellant, Roberts, to the Stratmanns, so that whatever title Roberts acquired after December 1, 1913, would not pass to the Atwoods by reason of such warranty."

When Alice Stratmann and husband, E. Stratmann conveyed the land, including the two strips in controversy, to Ida L. Atwood, note No. 3 above quoted was given as a part of the consideration. It provides that, in the event the record title to the two strips was not perfected at the date of the maturity of the note, the $363.12 should be credited on the note. At the maturity of the note, the title had not been perfected; the Atwoods paid the consideration for the land less than $363.12, and that sum ($363.12) was then credited on the note.

The contract of December 1, 1913, was then made with Roberts, the warrantor of the Stratmann title. That contract recognizes that the title to the two strips was then imperfect and that the Atwoods desired that the title should be made perfect. Additional time was given for perfecting the title. Roberts at that time had purchased the note No. 3 from the Stratmanns. The subsequent proceedings were had under the new contract. The Stratmanns were then eliminated from the effort of Roberts to perfect the title in the Atwoods, and the agreement of the Atwoods was to pay to Roberts the agreed value of the two strips, in the event the title was perfected under the stipulations of the contract of December 1, 1913. At that time, the condition of the title was that the Atwoods held the title to the land, including the two strips, by warranty deed from the Stratmanns, free of the vendor's liens; Roberts being the remote vendor to Alice Stratmann by warranty deed. The insistence of the appellee under this cross-assignment is that appellant would, for the consideration of $363.12, perfect the title to the two strips of land, and that there was no provision in the contract that any warranty contained in his deed should be in any way canceled, modified, or limited, and that the pleadings would not support the judgment modifying the effect of Roberts' warranty.

The record discloses the contract to be that, if Roberts perfected the title to the two strips of land according to the stipulations in the contract of December 1, 1913, he should

be paid the sum of $363.12. If Roberts had not performed the contract as stipulated, he should not recover such sum, nor should he, in the absence of an agreement, destroy or in any way affect the title given him in the warranty deed. The trial court found that Roberts had not complied with the stipulations in the contract, but the court undertook to pass upon the sufficiency of the title tendered by Roberts on the trial, and held that the title then tendered was relieved of the imperfections complained of, and, Atwood refusing to accept the title as tendered, the court, in the judgment, undertook to limit the effect of the warranty deed from Roberts to Stratmann, so that whatever title Roberts acquired after December 1, 1913, should not pass to the Atwoods. As stated in the cross-assignment, there is no provision in the contract that his deed should be so limited, and it seems to be that appellant's pleadings do not support such judgment. The rule clearly is that any after-acquired title inures to the benefit of the vendees under the warranty. Appellant's contention that Atwood should not have the benefit of a title not paid for is hardly supported by the facts. There is nothing in the note upon which the sum of $363.12 was credited, nor in the contract, nor in the evidence, to show that the sum of $363.12 was the actual or the agreed value of the two strips of land. That amount was agreed in the note to be retained by Atwood until its maturity, and, if at that time the title was perfected in the Atwoods, the amount was to be paid and, if not, was to be credited on the note. In the new contract, the sum of $363.12 was the consideration to be paid to Roberts should he perform the contract.

The cross-assignment is sustained, and the judgment reformed that appellant take nothing by his suit.

Reformed and affirmed.