This suit is brought to cancel and rescind a contract for the sale of real estate situate in the City of Newark, made between the defendant, The Mennen Company, as seller, and plaintiff's assignor as purchaser, and to impress a lien on the premises in the sum of $15,000 which represents the deposit made on account of the purchase price.
Defendant, The Mary Lou Corporation, was joined because it acquired title to the property with knowledge of the plaintiff's outstanding contract of sale.
The complaint, as amended, sets out three causes of action. The first two concern the defendant, The Mennen Company, since the relief sought is cancellation and rescission and the return of the deposit moneys. The third count is against the defendant, The Mary Lou Corporation, and seeks to impress a lien on the property.
The contract of sale contains a clause which reads:
"The seller's obligation to convey pursuant hereto shall have been performed if it conveys to the purchaser a title which will be guaranteed to the purchaser by Lawyers Title Guaranty Company of New Jersey, subject only to the exceptions herein set forth.
"Immediately upon the execution and delivery hereof the seller will order from Lawyers Title Guaranty Company an examination of title to the premises herein described. In the event of the unwillingness of said Title Company to insure title to said premises subject only to the exceptions specified herein, the seller shall pay the cost of such title examination and return the deposit of $15,000 made upon execution and delivery hereof and thereupon the parties hereto shall be relieved of all further obligations to each other hereunder. In the event that said Title Company reports its willingness to guarantee the title to said premises subject only to the exceptions herein stated, the purchaser shall, if conveyance be made pursuant hereto, contemporaneously with such conveyance pay to the seller the cost of such title examination and shall pay to such Title Company such additional charges as may be made by it for insuring title to said premises, subject only to the exceptions hereinabove specified."
Thus the title must have the stamp of approval of a third party, — Lawyers Title Guaranty Company, — and without such approval, except in the respects set forth in the contract, the parties would be relieved of all obligations thereunder.
The seller ordered an examination of the title from said Title Company and a report thereof was issued on February *Page 585 
1, 1948. A current survey also was ordered. Both report of title and survey were forwarded to plaintiff's attorneys on February 18, 1948. The report of title set forth some fifteen or more items of exceptions which were not "specified" in the contract of sale and without which exceptions the Title Company would not guarantee the title.
The Mennen Company, was at no time, and is not now, the owner of the property which it contracted to sell, and the contract so states. The premises in question had for some time been involved in foreclosure proceedings at the instance of the National Commercial Title Mortgage Guaranty Company. A writ of fierifacias had been issued and returned unsatisfied. The Mennen Company undertook to purchase the foreclosure decree and cause the premises to be sold at sheriff's sale so that it, or its nominee, could purchase the property and convey the same to the plaintiff. The contract is dated January 26, 1948, and the sheriff's sale was held the latter part of July and later confirmed. The first title closing was set down during the latter part of August, 1948. The Mennen Company was not ready to convey because its title was not insurable and a stipulation of continuance was signed by the attorneys fixing September 27, 1948, at 12 o'clock noon as the date and hour for closing, and time was made of the essence. On September 27, 1948, the same situation obtained and a similar stipulation, likewise making time of the essence was signed, fixing October 15, 1948, as the closing date. On October 14, 1948, the closing date was again postponed and a third stipulation of continuance was signed fixing October 28, 1948, as the closing date and time was made of the essence.
On September 27, 1948, the plaintiff, with her attorneys, appeared and brought with them the sum of $65,000 in cash. The title was discussed and objections made thereto and the closing was again adjourned to November 3, 1948, at 3 P.M. and again time was made of the essence. On this latter date, plaintiff and her attorneys again appeared but no representative of the Title Company was present; none of the exceptions set forth in the Title Company's report had been removed; the title itself was unmarketable and the attorneys *Page 586 
for the defendant, The Mennen Company, had not, as was required of them in the contract of sale, drawn the purchase money bond and mortgage which plaintiff was to execute in part payment of the purchase price. Neither the defendant nor its attorneys took any steps to perform by three o'clock of that date as required in the stipulation which fixed the date and made time of the essence. At three o'clock plaintiff tendered to the defendants' representative and their attorneys, two cashier's checks aggregating $65,000. Plaintiff was, at that date and hour, fully prepared to do and perform all that the contract required of her. This tender was conditioned upon the seller conveying to the plaintiff a title which will be guaranteed to the purchaser by Lawyers Title Guaranty Company of New Jersey, subject only to the exceptions therein set forth. The items of exceptions in the report of title had not been removed, nor were the papers and documents required by the report of title produced or even prepared. After the tender of the purchase price was made, the defendant, The Mennen Company, purported to tender a deed to the plaintiff which was not executed by the defendant, The Mennen Company, but by an unknown corporation, The Mary Lou Corporation, which had only recently been organized and about which neither the plaintiff nor the title company had ever been informed.
The Title Company's report showed that a defect in title existed in that the premises were encumbered by an easement created by express grant as recited in some earlier deeds in the chain of title giving to the adjoining owners and their successors in title the right to have their southerly wall perpetually embedded in the northerly wall of the premises in question. Plaintiff thereupon demanded the return of the deposit money which was refused.
Defendant, The Mary Lou Corporation, has filed its counterclaim for damages alleged to have been sustained by reason of its resale of the property for a lesser amount than that named in the contract of sale between the parties named therein. The counterclaimant does not allege it to be the vendor's assignee, and therefore The Mary Lou Corporation *Page 587 
has not succeeded to any of the vendor's rights or obligations under the contract for sale of real estate.
Where the seller and purchaser agree that the title to be conveyed will be guaranteed or insured by a Title Company, subject only to specifically named exceptions, the tender of a deed without such a guaranty or title insurance policy is insufficient. The parties are bound by the decision of the Title Company and the purchaser is entitled to its equitable remedy of rescission and cancellation and a vendee's lien for the amount of its down payment.
When time is made of the essence for the closing of title to real estate, it is essential that both parties be able, ready and willing to perform at the time and place fixed. If the vendor fails to perform at the time stipulated he must be deemed to have defaulted and cannot retain the deposit moneys paid thereunder.
The counterclaimant, The Mary Lou Corporation, being the mere "nominee" of the contract vendor and not its assignee, cannot recover on its counterclaim.
Love v. Fetters, 98 N.J.L. 784, 121 A. 607 (E. A.
1923), was a suit by the purchaser to recover deposit moneys paid on account of a contract for the sale of real estate. The contract provided that the property was to be conveyed "clear of all encumbrance and such as the Ocean City Title and Trust Company will insure, subject to their regular printed exceptions and also the reservations and restrictions of the Ocean City Association * * *." Mr. Justice Parker, speaking for our Court of Errors and Appeals, said:
"From the foregoing quotations one thing stands out very clearly, viz., that Love was stipulating for a title not merely marketable in the usual sense of that word, but one that the title company `would insure subject to their regular printed exceptions.' * * * No such title was ever tendered; for the title company refused to insure it in regular course. * * *
"As we have said, plaintiff was not contracting for a marketable title in the ordinary sense; he was stipulating for a title which the local company would insure, so that he could turn over the policy to a mortgagee, or a purchaser.
"Contracts whose performance is conditioned on the approval of third parties are common enough. The approval of an architect or *Page 588 
engineer in a working contract is a matter of every-day stipulation. Municipal bond issues are underwritten by bankers subject to the condition precedent that the legality of the bonds shall be passed on by their counsel, or counsel agreed on. In a reported Texas case, the approval of purchaser's attorneys of the title to land was a condition of performance and held controlling in the absence of bad faith. Roberts v. Atwood, 188 S.W. Rep.
1014. Arbitration contracts are in the same general class. The validity of such stipulations is beyond dispute, and where the parties have agreed to them they must be bound by them in the absence of fraud, of which there is no claim in this case by defendants.
"The judgment will be affirmed."
In Vautrinot v. Booth, 105 N.J. Eq. 211, 147 A. 539, the deposit moneys were held in escrow and the vendor, who had agreed to convey a title "such as will be insurable and guaranteed, without any exceptions, by any one of the title companies of Atlantic City," brought suit to recover from the escrowee the $5,000 deposit. It was shown that one of the Title Companies of Atlantic City refused to guarantee the title without exceptions and the purchaser brought suit. There was a decree in favor of the defendants. In affirming, Judge Hetfield, speaking for the Court of Errors and Appeals, said among other things:
"* * * the fact still remains, that there was no evidence submitted to show that the appellants were at any time in a position to tender such title as was required by the contract, or that the title company would have excluded the exception relating to rights of way, not of record; and until this was done, we cannot conceive on what theory the appellants would have any claim upon the deposit held by the complainant, as one of the stipulations of the contract provided that if the title could not be insured without any exceptions, the deposit was to be returned to Alexander, the vendee, and the parties were bound by the decision of the title company, in the absence of fraud, and there is no claim of this nature made by the appellants."
In the instant case the report of title issued by the Lawyers Title Guaranty Company of New Jersey expressly set forth certain objections to the title which would be excepted in the guaranty unless "documentary evidence of their removal" would be submitted in form satisfactory to it. *Page 589 
Again in the instant case time having been made of the essence, the obligation of the defendant seller to perform by 3 P.M. on November 3, 1948, was mandatory and certain.
In Doctorman v. Schroeder, 92 N.J. Eq. 676, 114 A. 810 (E. A. 1921), affirmed on the opinion below of Vice-Chancellor Leaming, a contract for the sale of real estate was involved. Time was made of the essence for performance and fixed at 2:30 P.M. The purchaser did not appear until 3 P.M. — a half hour late. The Vice-Chancellor, after reciting the facts in that case, pointed out that the vendors were dissatisfied with the vendees. He said:
"* * * The real reason, however, to my mind, was that they saw the opportunity — the owners saw the opportunity — to get rid of a purchaser they did not like and they availed themselves of it.
"Now, I hold that it was their right to avail themselves of such an opportunity. They lawfully did it.
 * * * * * * * *
"I, therefore, base my decision in the case entirely upon the theory that when the hour for performance arrived and complainant failed to perform her rights under the contract ceased at the option of the owner."
Moreover, the title in the instant case was unmarketable since it was beclouded by an easement which made the premises in question subservient to the property adjoining on the north. This easement was specifically set forth in the deeds to the Mennens individually and to their corporation, Mennen Estates, Inc., so that they had full notice thereof, and yet neglected to specify it in the contract of sale.
It is concluded that the plaintiff is entitled to a judgment of cancellation and rescission of the contract and the return of the deposit money paid, and in default of such payment a lien therefor on the premises in question. The counterclaim of The Mary Lou Corporation will be dismissed. *Page 590