THE LEHIGH AND HUDSON RIVER RAILWAY COMPANY, PLAINTIFF IN ERROR, v. GEORGE ANTALICS, DEFENDANT IN ERROR.

Argued March 17, 1911—Decided June 19, 1911.

1. The action of trespass, being a possessory action, the party in possession is the apparent owner, and by possession has a good title against all the world, for every purpose, until a superior one is shown, the plea of *liberum tenementum* casting the burden of proving title upon the defendant, which is not shifted by a traverse alleging property in the plaintiff.
2. A description in a conveyance, referring to a map annexed, must be read in connection with such map, and the court must interpret the scope of the conveyance by reference to both.

---

On error to the Sussex Circuit Court.

For the plaintiff in error, *George M. Shipman.*

For the defendant in error, *Coult & Dolan.*

The opinion of the court was delivered by

VOORHEES, J.   Two assignments of error have been argued as grounds for reversing the judgment for the defendant rendered on the verdict of a jury in an action of *quare clausum fregit.* The case shows that the defendant owned and occupied land adjoining the plaintiff's right of way, on its northerly side, near Franklin Station, in Sussex county, the lands being separated from each other by a fence.   The trespass consisted in breaking down this fence in two places, and passing over a narrow portion of the right of way to a public highway which crossed the railroad, in a winding and diagonal manner near one of the points where the trespasses were committed.

The first error assigned is to the refusal of the court to direct a verdict for the plaintiff.

There was evidence of the possession of the *locus in quo* by the plaintiff, at the time of the commission of the trespasses, by testimony of a witness or witnesses to that fact, which was uncontradicted.

This, under ordinary circumstances, would have been sufficient to sustain the plaintiff's case, and because uncontroverted, have authorized the direction prayed for.

The action of trespass, being a possessory action, the party in possession is the apparent owner, and by possession has a good title against all the world, for every purpose until a superior one is shown (*Todd* v. *Jackson, 2 Dutcher* 525), the plea of *liberum tenementum* casting the burden of proving title upon the defendant, which is not shifted by a traverse alleging property in the plaintiff.   *Outcalt* v. *Durling,* 1 *Id.* 443.

The difficulty with this case, however, was that the plaintiff failed to rely upon his possession and sought to prove his title. The court seems to have misconceived the real issue, probably because of the plea of *liberum tenementum* interposed by the defendant, and confined the case to the paper title.   This

course was apparently acquiesced in by both parties, for the court, in charging the jury, said:

"In order for the plaintiff to succeed in this case, it must show a title to the land in question."

Accepting this theory of the case, the plaintiff carried it into the form of his request to direct a verdict, for he failed to state, as a ground for that motion, that he relied upon his possession, but distinctly placed his reliance "on the strength of the description in this right of way book on the ground that under the description in the right of way book, as described on this deed, the railroad company is the owner of the property where the fence was broken down, and the testimony shows that conclusively."

If the motion is to prevail, therefore, it must be upon the ground so set forth and particularly brought to the attention of the court, for no other reasons can be urged on error to reverse a ruling of the trial court. *Trade Insurance Co.* v. *Barracliff*, 16 *Vroom* 543; *Wallace, Muller & Co.* v. *Leber*, 36 *Id*. 198; *Jackson* v. *Consolidated Traction Co.*, 30 *Id.* 25.

Turning then to the proof of title offered by the plaintiff, we find that it consisted of an award made by commissioners in proceedings in condemnation in 1882, under which the plaintiff's right of way was acquired.

The description therein, which is alleged to cover the *locus in quo*, is by reference to measurements from the centre line of the railroad and also by reference to a map referred to in the description and annexed to it.

The right of way consists of a strip seventy-five feet in width on the northerly side of the centre line and twenty-five feet on the southerly side of the centre line. The beginning of the centre line, at station 1896+96, was fixed by the defendant's surveyor. This line, according to the description, ran "thence along the centre line of the Lehigh and Hudson River railroad on a five-degree curve bearing to the left a distance of ten hundred and forty-four (1,044) feet to the line of lands of the New York, Susquehanna and Western Railroad Company. Embracing a width of fifty feet on each side of said centre line from said place of beginning, a distance of eight

hundred and forty-two (842) feet to station 1905+38 on the easterly side of the Walkill. Then a width of twenty-five feet on the southerly side and seventy-five feet on the northerly side of said centre line to the said lands of said the New York, Susquehanna and Western Railroad Company. Containing two acres and forty-eight hundredths of an acre of land, as more fully appears by a map hereto annexed and by the plot thereon marked Plot No. 2."

The tracks of the New York, Susquehanna and Western railroad cross the right of way of the plaintiff easterly of the point where one of the openings in the fence had been made by the defendant.

It was claimed by the defendant that the plaintiff's title did not extend easterly beyond a point where its measured centre line of ten hundred and forty-four feet would end, a point lying somewhere between the location of the two places where the trespasses occurred and excluding the more easterly one.

The defendant did not contend that he was in possession of any part of the *locus in quo,* or that he claimed any rights therein. He did not dispute the facts which constituted the trespass, nor did he prove any title in himself or title in a third person under whom he might justify. *Todd* v. *Jackson, supra.* In other words, the defendant relied upon what he considered the failure of the written description set out in the condemnation proceedings to carry the plaintiff's land eastward of a point lying between the two breaks in the fence. The description, however, and the map referred to in it and annexed to the award plainly must be read together.

In 3 *Washb. Real Prop.* 367 it is declared: "Where lines are laid down upon a plan and are referred to accordingly in a deed, they are to be regarded as giving the true description of the parcel, as much as if expressly recited in the deed itself."

The defendant sought to ignore the force and effect of the map.

Referring to the plot, we find delineated on it both the northerly and southerly boundaries of the plaintiff's tract, the northerly boundary continues until it strikes a highway fence, while the southerly boundary at a point further west passes

through this curved highway fence into the highway, and then at an angle continues northeasterly through and along the highway, until it strikes the same highway fence, where the fence curves easterly, thus showing a triangle as the northeasterly end of the plot. This is in conformity with the description itself, for while the centre line stops at the point ten hundred and forty-four feet, which it is stated is the boundary of the New York, Susquehanna and Western railroad lands, and was not disputed by the defendant, the lands continue on until they also strike the same boundary, which is shown upon the plot, as above stated, by the line which passes through the above termination of the centre line.

Moreover, the boundaries of the whole of Plot No. 2 appear tinted on the map, and these boundaries include the triangle. This also appears from the testimony. It was across the triangular piece that the defendant's witness said the more easterly trespass had been committed.

The question between the parties was narrowed down to the effect of the plaintiff's award, and an effort on the part of the defendant to limit the description to a measured line because there were no physical monuments on the ground otherwise to control it.

Counsel for the defendant practically conceded this; for when there was a comparison of the maps of the two surveyors, he stated:

"On our map that is just the same; here is Antalics' property; here is the Remos property; there is a lane through Mr. Remos' property and we come out through Mr. Remos' property and drove across here into the public road. Our claim is the railroad title ends there, goes down here to this point and stopped there, according to the terms of that deed; the claim of the railroad is that the centre line runs to there and terminates, and that those side lines keep on going, or this one stops here, because it comes to the land of the Susquehanna, and this side line keeps on going until it comes way up here to strike the land of the New York, Susquehanna and Western railroad at some point up here. * * * There is no dispute.

\* \* \* That is the only question in regard to the paper title of the defendant."

It was therefore uncontroverted that if the plaintiff's construction of the award prevailed, the plaintiff was entitled to recover.

At the close of the case, therefore, there remained only a legal question, and that was the construction to be given to the award. That instrument clearly carried the title to the lands forming the triangle, which admittedly included the *locus in quo*.

A description in a conveyance, referring to a map annexed, must be read in connection with such map, and the court must interpret the scope of the conveyance by reference to both.

The submission to the jury of this question was clearly wrong. The plaintiff's motion to direct a verdict for the plaintiff should have prevailed.

The remaining assignment of error has been examined, but has been found to be unavailable to the plaintiff.

The judgment will be reversed to the end that a *venire de novo* may be awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, CONGDON, SULLIVAN, JJ. 11.