EARL G. STANNARD, PLAINTIFF-RESPONDENT, v. SHELL EASTERN PETROLEUM PRODUCTS, INCORPORATED, AND EDGEWOOD SERVICE CORPORATION, DEFEND-ANTS-APPELLANTS.

Submitted May 29, 1936—Decided October 2, 1936.

164

For the appellants Shell Eastern Petroleum Products, Incorporated, *Louis B. LeDuc.*

For the appellants Edgewood Service Corporation, *Maurice L. Praissman*

For the respondent, *Bleakly, Stockwell & Burling.*

The opinion of the court was delivered by

PERSKIE, J. This is defendants' appeal from judgments based on jury verdicts in favor of the plaintiff. These judgments cannot be sustained for reasons which become apparent upon a recurrence to the rather involved factual situation here presented.

Suit was instituted by the plaintiff against the Edgewood Service Corporation (hereinafter called Edgewood) and the Shell Eastern Petroleum Products, Incorporated (hereinafter called Shell), jointly and severally. It is important to

mark the fact that the complaint relates to three separate items only: (1) an alleged unlawful eviction for which damages are sought in an action of trespass *quare clausum fregit;* (2) an alleged conversion of personal property for which damages are sought in an action of trespass *de bonis asportalis;* and (3) damages for failure on the part of the defendant Edgewood to return the sum of $100 deposited on account of an agreement made between the plaintiff and Edgewood. There was also a counter-claim by Edgewood against the plaintiff in which the former sought to recover damages for injury to a service station, and damages for personal property loaned by Edgewood to plaintiff. Judgment on this counter-claim was for the plaintiff and the propriety thereof appears to be unchallenged on this appeal.

The proofs disclose that Morris Stempa, the owner of the service station in question leased this station to the defendant Shell for three years commencing November 15th, 1929. Stempa then conveyed the station to Edgewood (of which corporation he had control), and that company executed a renewal lease to Shell to run for three years commencing November 14th, 1933. Throughout the entire period in controversy Shell was paying regularly, first to Stempa and then to Edgewood, the stipulated rent of one cent per gallon of gasoline sold on the premises. At the time of the renewal lease from Edgewood to Shell, Stempa was operating the station for Shell. Then the plaintiff in this action was solicited by Stempa to take over the operation of the station. As an inducement to plaintiff, Stempa procured Edgewood to enter into a written agreement with the plaintiff for the sale of certain equipment at the station owned by Edgewood and for the loan of other equipment. This agreement was conditioned upon the plaintiff's executing a lease for the station with Shell. An "operating agreement" between Shell and the plaintiff was then executed on or about July 6th, 1933. Neither Shell's representative, one Smith, nor Shell itself was ever aware of the contract of sale and loan between Edgewood and the plaintiff. This "operating agreement" was not a lease but merely gave plaintiff a right to buy and sell Shell products at the station and to use Shell's equipment

for this purpose. Several changes were made in the dates on this agreement but the material provisions thereof remain unaltered and the changes that were made therein do not affect this controversy.

Plaintiff continued under the operating agreement until the fall of 1934. On October 17th, 1934, Shell served notice of the termination of the agreement because of the alleged failure of the plaintiff to conduct the business properly. Plaintiff denied this charge but this is immaterial as the terms of the agreement provided for termination by either party for any or no cause upon notice. Several extensions in time were granted the plaintiff, who, evidently in anticipation of removal had on November 1st, 1934, obtained a lease for a garage nearby. On December 5th, 1934, Smith, Shell's representative, Stempa, and one Jeffries, an employe of Stempa, took possession. They inventoried the gas and oil and removed plaintiff's equipment. In accordance with the "operating agreement" Smith tendered plaintiff cash for the amount of the inventory. This tender was refused as was a money order sent by registered mail from Shell. Plaintiff's claims for damages were confined to the value of the gas and oil retained by Shell for which tender was made, and for an alleged loss of profits following the eviction.

It should also be noted that plaintiff testified that prior to the written agreement of sale and loan with Edgewood, he made an oral agreement for a lease of the station with the latter. This Stempa denied. This testimony as to the oral lease was admitted over objection.

*First:* Notwithstanding the confines of the pleadings hereinbefore set forth in detail, the learned trial judge charged as follows:

"The plaintiff alleges that on or about the 5th day of July, 1933, he entered into an agreement with the defendant Edgewood whereby the plaintiff was to rent certain premises known as 503 West Kings Highway, Audubon, New Jersey, for a period of time until December of 1936; that his rental of this station from defendant Edgewood, as he alleges, was subject to the right of the defendant Shell to maintain its equipment in this service station and to have its product sold from that particular service station.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"The plaintiff alleges that by virtue of the alleged renting of the property from Edgewood and the agreement for the purchase and loan of the personal property, he went into possession of this service station \* \* \*.

"The plaintiff alleges that he went into possession of this property under his so-called renting agreement with Edgewood."

Respondent concedes that there were no such allegations in the complaint but contends that since trespass is a possessory action it was sufficient to allege possession, and this the complaint did. It is true that an allegation of possession is sufficient in an action of trespass. *Appleby* v. *Obert,* 16 *N. J. L.* 336, 340; *Phillips* v. *Kent & Miller,* 23 *Id.* 155, 156; *Todd* v. *Jackson,* 26 *Id.* 525, 538; *Bloom* v. *Stenner,* 50 *Id.* 59, 63, 64; 11 *Atl. Rep.* 131; *Lehigh and Hudson River Railway Co.* v. *Antalics,* 81 *N. J. L.* 685, 686; 80 *Atl. Rep.* 469; *Stied* v. *Lieberman,* 4 *N. J. Mis. R.* 192, 193; 132 *Atl. Rep.* 295; *Thompson* v. *Jannarone Contracting Co.,* 6 *N. J. Mis. R.* 320, 321; 141 *Atl. Rep.* 25; *Eaton* v. *Schild,* 8 *N. J. Mis. R.* 245, 247; 149 *Atl. Rep.* 637; *Manna* v. *Industrial Credit Corp.,* 10 *N. J. Mis. R.* 1098, 1099; 162 *Atl. Rep.* 559. See, also, 63 *C. J.* 903; 26 *R. C. L.* 955. The pleadings in this case, however, did not allege a tenancy. The learned trial judge, therefore, submitted to the jury an issue not raised by the pleadings. In so doing he fell into reversible error. *Excelsior Electric Co.* v. *Sweet,* 59 *N. J. L.* 441; 31 *Atl. Rep.* 721; *Partridge* v. *Woodland, &c., Co.,* 66 *N. J. L.* 290; 49 *Atl. Rep.* 726; *Murphy* v. *North Jersey Street Railway Co.,* 71 *N. J. L.* 5; 58 *Atl. Rep.* 1018; *Merklinger* v. *Lambert,* 76 *N. J. L.* 806, 814; 72 *Atl. Rep.* 119; *Bierman* v. *Stiefel,* 82 *N. J. L.* 658, 661; 83 *Atl. Rep.* 870; *Duel* v. *Mansfield Plumbing Co.,* 86 *N. J. L.* 582, 585; 92 *Atl. Rep.* 367; *Reaney* v. *Central Railroad Co.,* 89 *N. J. L.* 282; 98 *Atl. Rep.* 258; *Garibaldi* v. *Rubenstein,* 99 *N. J. L.* 223; 122 *Atl. Rep.* 727; *Killeen* v. *Public Service Co-ordinated Transport,* 10 *N. J. Mis. R.* 366; 159 *Atl. Rep.* 147. Nor was there any evidence of a rental by Edgewood to plaintiff. Thus the principle of law that where, "the real question in con-

troversy has been fully and fairly tried, though not precisely pleaded, and the complaining party has not been surprised or injured, this court on appeal has the power to amend the pleadings to support the judgment, and will in such case, in the interest of justice exercise the power" (*Levenson Wrecking Co.* v. *Gatti-McQuade Co.*, 93 *N. J. L.* 184, 186 (and cases there cited); 107 *Atl. Rep.* 277), is not applicable here.

*Second:* Since the case may be retried, it should be noted that the trial court allowed the jury to draw what inferences it chose from the "operating agreement." This we think was also error. The agreement was not ambiguous. Under it the plaintiff was either a lessee in which event he would have possession or a licensee in which event he would not. The difference between the two is a distinction far too subtle for the mind of the average person. Manifestly jurors should be entitled to an explanation and a review of the legal elements involved. This agreement should have been construed by the trial court. It was a question of law—not of fact. *Kean* v. *Davis*, 21 *N. J. L.* 683, 687, 688; *Grueber Engineering Co.* v. *Waldron*, 71 *Id.* 597; 60 *Atl. Rep.* 386; *Sommer Faucet Co.* v. *Commercial Casualty Insurance Co.*, 89 *N. J. L.* 693; 99 *Atl. Rep.* 342; *Down* v. *Plate Glass Insurance Co.*, 91 *N. J. L.* 523, 525; 103 *Atl. Rep.* 205; *Gieger Sons* v. *Waldron*, 100 *N. J. L.* 93, 94; 125 *Atl. Rep.* 18; *Frisbie Throwing Co.* v. *London Guarantee, &c., Co.*, 105 *N. J. L.* 613, 614; 146 *Atl. Rep.* 215.

Judgments reversed, and *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, COLE, JJ. 15.