Bower *v.* Hadden Blue Stone Co.

grounds on which this court might properly entertain a bill for the adjustment, in one suit, of the contribution called for by the covenant.

The motion to dissolve will be denied, with costs.

FREEMAN BOWER

*v.*

THE HADDEN BLUE STONE COMPANY and DANIEL M. LYON.

1. Any writing which clearly appropriates a fund or property to a person, will, in equity, be esteemed an assignment. Equity disregards mere form.

2. A suitor whose title is purely equitable, has no remedy at law, but must resort to equity.

3. When the parties to a contract have expressed their meaning by plain words, there is nothing to construe, and in such a case all a court can do is to enforce the contract.

4. A purchaser who co-operates with the vendor in the misappropriation of purchase-money which he knows was raised for the benefit of a third person, renders himself liable to the person defrauded to the extent of the fund misapplied with his connivance.

On bill, answers and proofs.

*Mr. Ludlow McCarter* and *Mr. John R. Emery,* for complainant.

*Mr. Joseph Coult,* for defendant Lyon.

*Mr. John A. Miller, Jr.,* for the corporation.

Bower *v.* Hadden Blue Stone Co.

THE VICE-CHANCELLOR.

The instrument which gives rise to this suit is in these words:

"This is to certify that, in consideration of a $1,000 bond on the town of Harrison, to me in hand paid by Freeman Bower, of the town of Harrison, Hudson county, New Jersey, I, Daniel M. Lyon, treasurer of the Hadden Blue Stone Company, do hereby agree to assign, transfer and set over unto the said Freeman Bower such an interest in the judgment obtained by the Hadden Blue Stone Company against James B. Smith, of the town of Harrison, in the supreme court of the state of New Jersey, for the sum of $2,501.59, besides costs of suit, on the 24th day of November, 1873, as will secure to said Bower the repayment of the sum realized by me on said bond, paid by him as aforesaid, on account of the aforesaid judgment against said James B. Smith. Witness my hand, this 17th day of December, 1873. Daniel M. Lyon, treasurer."

It is admitted that $900 was realized on the bond. It also appears that in April or May, 1874, a debtor of James B. Smith (the judgment debtor) paid to the defendant Lyon, on account of the judgment, the sum of $443.56, and that on the 18th of June, 1874, Smith's real estate was sold, under the judgment, for $1,700, making the sum total realized $3,043.56. With costs added, the total amount of the judgment, at the date of its recovery (November 24th, 1873) was $2,539.35. The real estate was struck off to Mr. Lyon. He says he purchased for the plaintiff. His signature to the memorandum of purchase has the word "treasurer" written under it. The sheriff conveyed the property to him, but he says this was done pursuant to an agreement subsequently made by the corporation and himself, by which it agreed to sell him the land for $100 less than the amount of his bid. He also says he has paid to the corporation all the money he received on the judgment. He was its treasurer, also a director, and the owner of two-fifths of its stock. At the time he paid the purchase-money of the land, he admits the corporation was badly crippled. He says it was indebted to him in the sum of $17,000 or $18,000, and had sunk more than three-fourths of its capital. With a

Bower v. Hadden Blue Stone Co.

paid-up capital of $100,000, its franchise and all its other property were sold, on the 5th of March, 1875, for $13,000. According to his statement its losses mainly occurred in 1871 and 1872. His account of the payment of the $1,600 is both confused and contradictory. It is impossible to resist the belief that, either he has a very treacherous memory, or is unwilling to disclose all he remembers.

Three questions were discussed on the hearing: First, is the complainant in the proper forum; second, does the contract give the complainant the right to be first paid out of the moneys realized on the judgment; and, third, is the defendant Lyon liable to the complainant for any part of the purchase-money of the land purchased by him.

On the argument, it was admitted that the defendant Lyon had authority to bind the corporation by the contract of December 17th, 1873. Without such concession or proof showing that he was specially empowered, I think it is quite clear the contract could not be regarded as the act of the corporation. It was, in effect, a borrowing of money by pledging the property of the corporation, and this, in my view, the treasurer of such a corporation would have no power to do in virtue of his office or employment. To make it the act of the corporation, special authority would have to be shown.

I think it is entirely clear, the complainant has a right to a remedy in equity. His contract is not an assignment, but merely gives him a right to an assignment. His title, therefore, is purely equitable. Without an actual assignment or legal title, a court of law is powerless to give him any aid; but equity disregards mere form; if the right exists, even if it is not formally manifested, it will afford both remedy and relief. In equity no particular form is necessary; any writing, or even an act, which plainly makes an appropriation of the fund or property, will be esteemed an assignment. 2 *Story's Eq. Juris.* § 1047; *Galway* v. *Fullerton*, 2 *C. E. Gr.* 389.

Nor do I think there can be the slightest doubt about what the contract means. It was drawn by the counsel of the

corporation, most probably under the direction of the officers who negotiated it. The defendants selected the language in which their obligation should be expressed, and are not, therefore, in a position to ask that its words shall not be read according to their natural force, nor that full effect shall not be given to their plain sense. The contract plainly says that such an interest in the judgment shall be assigned to the complainant as will secure to him the sum realized on the sale of his bond. This language is so clear as to leave no room for construction. The parties have said, by very plain words, what they meant, and where that is the case the court has no duty to perform but to carry their meaning into effect. The complainant is to have such an interest as will give him his money back, even if it takes all. No particular or specified part or interest is carved out or separated, but he is to have so much, or whatever will repay him. The same idea would have been expressed if the language had been that he was to have the whole judgment, or so much or such part of it as should be sufficient to repay him. He was to be repaid in any event; his right is made paramount over every other right, and he would, therefore, have been entitled to his money, even if only a sum just sufficient to repay him had been collected.

Can the complainant hold the defendant Lyon for any part of the purchase-money of the land? The purchase-money was not paid to the sheriff; if paid at all, it was paid either to the corporation, its creditors or stockholders. It is impossible to say to whom it was paid, or whether it was paid at all. The defendant's evidence on this point is confused and contradictory. It is clear, a payment to the corporation did not constitute a payment to the complainant. Their rights were several and not joint—the complainant occupied a position of superior right,—hence a payment to the corporation was not a payment to him. The relation of principal and agent did not exist, either in fact or legal theory. If Mr. Lyon paid the money to anybody, he paid it with full notice of the complainant's rights. He nego-

tiated the contract, and signed it for the corporation. Between the day when he bid off the land and the day when he got his deed, he had an interview with the complainant, in which he tried to induce him to take the land, but he says he refused, stating that he wanted his money, and he would not accept anything else.  He also knew the corporation was deeply in debt and in sore need of money.  He knew the money belonged to the complainant, and that he demanded its payment; a payment to any other person, under such circumstances, was not only entirely without warrant, but wantonly reckless or fraudulent.  But it is said Mr. Lyon purchased the land of the corporation, and was therefore obliged, by force of his contract, to pay the purchase-money to the corporation.  As already remarked, the proof of payment is very unsatisfactory.  The books of the corporation, which, it is fair to assume, would have given full information on this subject, were not produced, although their production was demanded by legal process. The defendant could have produced them, if he had desired to do so.  His conduct in this respect evinces a determination to conceal what he ought to have been anxious to exhibit, if his statements were true.  His conduct renders it impossible to believe that the books would have confirmed his story.  But, even if it be conceded that he made the purchase of the corporation, and paid it the whole of the purchase-money, still, I think he is unquestionably liable. The money came to his hands, subject to the complainant's rights; the moment it passed from the individual to the treasurer—if it did pass at all—he held it in trust for the complainant.  He had full notice of the trust, having been the instrument by which it was created.  He co-operated in the misapplication of the money—in fact, solely directed the misappropriation.  The wrongful act of the trustee was performed by him.  A purchaser who co-operates with the vendor in the misapplication of purchase-money which he knows is raised for the benefit of a third person, or, either directly or indirectly, aids the vendor in diverting the

money, renders himself liable to the person defrauded to the extent of the fund misapplied with his connivance. *Nicholls* v. *Peak*, 1 *Beas.* 69; 1 *Lead. Cas. in Eq.* 114. The defendants' liability rests upon principles of undoubted justice.

The complainant is entitled to a decree against both defendants.