CHARLES S. COLTON, complainant and respondent,

*v.*

CHAUNCEY M. DEPEW and THE WEST SHORE AND ONTARIO TERMINAL COMPANY, defendants and appellants.

---

CHARLES S. COLTON, complainant and appellant.

*v.*

CHAUNCEY M. DEPEW and THE WEST SHORE AND ONTARIO TERMINAL COMPANY, defendants and respondents.

[Filed June 18th, 1900.]

1. The statutes of limitations do not apply in terms to courts of equity, but courts of equity have always felt themselves bound by the principles of the statute, and, except in matters of strict trust and matters purely equitable in their nature, have acted in conformity with them.

2. A mortgagee has a double security for the payment of his debt, viz., the bond, which is a contract by the obligor to pay, and the mortgage, which is a conveyance of an estate in the mortgaged premises. Notwithstanding the mortgagee may have lost his action at law on the bond by reason of the statute of limitations, his remedy under the mortgage may still remain.

3. To deprive the holder of a bond and mortgage of his bill in chancery, to collect the debt by the sale of the mortgaged premises, the legal right of entry on the lands mortgaged, as well as the legal right of action on the bond, must be barred. By the statute of limitations (*Gen. Stat. p. 1975 § 13*) an action of debt upon a sealed instrument may be barred after sixteen years from the time the cause of action accrued, unless payment shall have been made thereon within the said period of sixteen years next before suit brought. By section 16 (*Gen. Stat. p. 1977*) it is provided that any person having a right or title to enter on lands, &c., shall make entry thereon within twenty years next after such right or title shall accrue, and shall be barred from any entry afterwards.

4. In order that possession shall give title, it must be adverse to the real owner. Mere possession for twenty years will not constitute a bar. To acquire title in virtue of the statute, the possession must be adverse for the statutory period.

5. A mortgagor who is in possession of mortgaged premises by sufferance or by the acquiescence of the mortgagee, paying interest on the mortgage, is not in under a possession which is adverse.

6. In this case an action on the ·bond was barred by the statute of limitations, but interest was paid on the debt within twenty years of the commencement of the foreclosure suit.—*Held*, that the complainant's remedy on his mortgage was not barred. *Blue* v. *Everett*, 11 *Dick. Ch. Rep. 455*, explained.

7. When the mortgage was given the legal rate of interest was six per cent. In 1866 the legal rate of interest was fixed at seven per cent., and the rate continued until 1878. On January 3d, 1871, D., who was then president of the ferry company, made an endorsement on the bond, agreeing, in consideration of the extension of the time of payment, that the rate of interest should be seven per cent. This endorsement did not appear to have been made in such a manner as would bind the company. —*Held*, that the vice-chancellor's allowance of interest at the rate of six per cent., disregarding this agreement, was correct.

On appeal from a decree advised by Vice-Chancellor Stevens, whose opinion is reported in *14 Dick. Ch. Rep. 126.*

This case was heard in the court of chancery before Frederic W. Stevens, vice-chancellor. A decree was made sustaining the mortgage, from which Chauncey M. Depew and the West Shore and Ontario Terminal Company appealed. The vice-

chancellor allowed interest on the mortgage debt at the rate of six per cent. only. From this part of the decree the complainant appealed.

The facts are these: On January 3d, 1863, Nathaniel Dole was the owner of a tract of land in Weehawken. On that day he executed a mortgage to William W. Niles to secure his bond for the sum of $17,000, payable with interest in one year after date. Niles, by a deed of assignment, dated the same day, assigned the mortgage to Jane Van Horn, whose surviving executor, on September 29th, 1882, assigned it to the complainant. The land mortgaged was conveyed by Dole, the mortgagor, to Delacroix by a deed dated August 1st, 1865. This deed contained no assumption clause and no agreement that the mortgage money should be taken as part of the consideration. Delacroix, December 31st, 1870, conveyed to the Weehawken Ferry Company. The title to the mortgaged premises remained in the Weehawken Ferry Company until July 9th, 1884, when it was conveyed by a master to one Simpson. Simpson, May 19th, 1885, conveyed to one Sims, who, by a deed dated May 26th, 1893, conveyed the same to Chauncey M. Depew, the present owner.

*Mr. Randolph W. Parmly* and *Mr. Charles L. Corbin,* for the complainant.

*Messrs. Vredenburgh & Garretson,* for the defendants.

The opinion of the court was delivered by

DEPUE, CHIEF-JUSTICE.

The Weehawken Ferry Company became the owner of the mortgaged premises by deed from Delacroix and wife, dated December 31st, 1870. This deed conveyed the mortgaged premises subject to the mortgage now in question, and to the Comstock mortgage, with the following clause of assumption:

"The payment of which two mortgages with the interest thereon from this date is hereby assumed by the party of the second part, making together $23,500, which is part of the consideration money expressed in this conveyance."

The estate vested in the Weehawken Ferry Company in the mortgaged premises was conveyed to Thomas B. Simpson by a master's deed, dated July 9th, 1884. From December 31st, 1870, to July 9th, 1884, the Weehawken Ferry Company was the owner of the mortgaged premises. The mortgage is dated January 3d, 1863, and conditioned for the payment of $17,000 in one year after its date. For several years interest was paid by the Weehawken Ferry Company to the assignee of the mortgage, the last payment being made on the 22d of December, 1876. This bill was filed December 18th, 1896. The last payment of interest was within twenty years next before the commencement of this suit.

The defendants in their answer set up as the substantial defence in this case:

"That the said complainant's alleged cause of action, being on a sealed instrument, for the payment of money only, did not accrue within sixteen years next before the commencement of this suit; and they further say that the said action was not commenced within twenty years after default on said alleged mortgage, and therefore the said complainant is barred of and from any action on his alleged bond and mortgage."

The defence thus brought forward presents the question whether the statute of limitations applies to a suit in a court of equity to enforce a mortgage by foreclosing the equity of redemption, and the construction of the statute in a court of law where title in the mortgagor arising from his possession is set up to defeat an action of ejectment by the owner of the mortgage.

In *Shields* v. *Lozear, 5 Vr. 496, 501,* it was held that "by the common law a mortgage in fee created an immediate estate in fee-simple in the mortgagee, subject to be defeated by the payment of the mortgage money on the day named in the condition, and the mortgagee might enter immediately on the mortgaged premises and hold the estate until the condition was performed. In this state it was held by this court that the right to enter was postponed, and the possession was in the mortgagor, until the condition was broken by default in the payment of the mortgage money. *Sanderson* v. *Den, ex. dem. Price, 1 Zab. 646, note.*

Colton *v.* Depew.

With this modification of the rights of the mortgagee, as to the postponement of ability to obtain the possession of the mortgaged premises, the nature of the mortgage, as a conveyance, remains as it was at common law." The conveyance of the mortgaged estate by the owner to the mortgagee.is a legal conveyance, on which ejectment may be brought in the same manner and subject to the same defences and governed by the same legal rules as if the deed of conveyance had been absolute.

A mortgagee has a double security for the payment of his debt, viz., the bond, which is a contract by the obligor to pay, and the mortgage, which is a conveyance of an estate in the mortgaged premises. The bond accompanying the mortgage was executed by Dole. The legal remedy against him on the bond was barred by the statute of limitations, unless saved by his residence out of the state, and he was discharged from his liability thereon by a discharge in bankruptcy, January 7th, 1868.

Neither the statute of limitations, which bars the obligee's right to maintain an action on the bond, nor the discharge of the obligor in bankruptcy, is an extinguishment of the debt. In both instances the remedy is taken away, but the debt remaining would be a valid consideration for a subsequent express promise to pay. *Briggs & Ely* v. *Sutton, Spenc. 581; Whyte* v. *McGovern, 22 Vr. 356.* Notwithstanding the mortgagee has lost his action at law on the bond, his remedy under the mortgage still remains. *Busw. Lim.* § *140 p. 201; 2 Jones Mort.* § *1204; Wagoner* v. *Watts, 15 Vr. 126, 129 (per Van Syckel, J.)* It was so decided in *Blue* v. *Everett, 11 Dick. Ch. Rep. 455.* It was there held that in order to deprive the holder of a bond and mortgage of his bill in chancery to collect the debt by the sale of the mortgaged premises, the legal right of entry upon the lands mortgaged, as well as the legal right of action on the bond, must be barred.

The statutes of limitations do not apply to courts of equity, for the reason that the words of the statutes apply only to particular legal remedies; but proceedings in equity to enforce a legal right are within the spirit and meaning of the statutes, and have always been so considered. The question has been

discussed as to whether a court of equity acts in analogy with the statutes or in obedience to them. Lord Redesdale expressed the opinion that where there was a legal right which became cognizable in a court of equity, courts of equity acted in obedience to the statute of limitations. *Hoveden* v. *Lord Annesley, 2 Sch. & L. \*607.* The rule seems to be that if the matter in controversy in a court of chancery is of a purely equitable' nature, not cognizable in a court of law, the statute of limitations has no application, but the court will apply the doctrine of neglect and lapse of time according to discretion, regulated by precedents and the peculiar circumstances; but when the two courts have concurrent jurisdiction, and also when the aid of equity is invoked on account of special circumstances, such as the need of a discovery, the difficulty of proceeding at law or the like, the statute is as effectual a bar as at law, with the qualification, that in cases of fraud it commences running from the time of the discovery of the fraud. *Lawrence* v. *Trustees, &c., 2 Den. 577, 581.* Mr. Justice Story, dealing with this subject, used this language: "The statutes of limitation, where they are addressed to courts of equity, as well as to courts of law, as they seem to be in all cases of concurrent jurisdiction at law and in equity (as, for example, in matters of account) to which they directly apply, seem equally obligatory in each court. It has been very justly observed that in such cases courts of equity do not act so much in analogy to the statutes as in obedience to them. In a great variety of other cases, courts of equity act upon the analogy of the limitations at law. Thus, for example, if a legal title would, in ejectment, be barred by twenty years' adverse possession, courts of equity will act upon the like limitation, and apply it to all cases of relief sought upon equitable titles or claims touching real estate. Thus, for example, if the mortgagee has been in possession of the mortgaged estate for twenty years, without acknowledging the existence of the mortgage, it will be presumed that the mortgage is foreclosed, and that he holds by an absolute title. If the mortgagor has been in possession of the mortgaged estate for the like space of time without acknowledging the mortgage debt, it will be presumed to be paid. If the judgment creditor has lain by for

twenty years without any effort to enforce his judgment, and it has not been acknowledged by the debtor within that time, it will be presumed to be satisfied. And in all these cases courts of equity will act upon these facts as a positive bar to relief in equity." *2 Story Eq. Jur.* § *1520; Ang. Lim.* § *26.* This general principle has been authoritatively adopted by the courts of this state. In *Conover* v. *Wright, 2 Halst. Ch. 612,* Mr. Justice Carpenter, speaking for this court, said: · "Whether courts of equity act in obedience or in mere analogy to the statutes of limitations, it has become a settled rule that they will apply them, in similar cases within the sphere of their jurisdiction, equally with courts of law. They have always·felt themselves bound by the spirit and meaning of these statutes, and ordinarily act in conformity to them. In cases concurrent with a remedy at law, they always allow them to be pleaded, and a party is not permitted to evade their effect by resorting to another forum." In *Executors of Wanmaker* v. *Van Bushkirk,· Sax. 691,* Chancellor Vroom said: "The statute of limitations does not apply in terms to courts of equity, but it is well known that they have always felt themselves bound by the principles of the statute, and, except in cases of strict trust and matters purely equitable in their nature, have acted in conformity with them." These passages were · quoted with approval, with a citation of a considerable number of cases, by Mr. Justice Dixon in *Blue* v. *Everett, 11 Dick. Ch. Rep. 455, 460.* It will also be observed that in that case, which was for the foreclosure of a mortgage, the complainant's rights under his bond and mortgage were held to be purely legal in their nature, and therefore subject in the court of equity to the application of the statute of limitations.

In an action of ejectment by the mortgagee against the mortgagor or his grantee in possession, the statute of limitations would be a defence. It would be equally available in a court of equity on a bill to foreclose, and upon the same construction that the statute would receive in a court of law. Section 16 of the statute of limitations provides:

"That no person who now hath, or hereafter may have, any right or title of entry into lands, tenements or hereditaments, shall make any entry therein, but within twenty years next after such right or title shall accrue; and such person shall be barred from any entry afterwards;"

Colton *v.* Depew.

with a proviso not pertinent to this case. *Gen. Stat. p. 1027.*
This section is substantially a re-enactment of the statute *21 Jac.
1, c. 16. .Spottiswoode* v. *Morris and Essex Railroad Co., 32 Vr.
322, 330.* Under the settled construction of this statute mere
possession for twenty years will not constitute a bar. In order
to acquire title or to defend in ejectment in virtue of the statute,
the possession must be adverse. *Foulke* v. *Bond, 12 Vr. 528.*
It does not follow that because the plaintiff's right of possession
accrued more than twenty years before suit brought, his right
of action is gone, for to produce this result it is necessary to
introduce a second factor, to wit, that there has been an adverse
possession covering the statutory period. *Van Cleve* v. *Rook,
11 Vr. 25, 26.*

In *Kirk* v. *Smith,* Chief-Justice Marshall said: "One of the
rules which apply to acts of limitation generally, which has been
recognized in the courts of England, and in all others where the
rules established in those courts have been adopted, is that pos-
session, to give title, must be adverse. The word is not, indeed,
to be found in the statutes, but the plainest dictates of common
justice require that it should be implied. It would shock the
sense of right which must be felt equally by legislatures and
by judges, if a possession which was permissive and entirely
consistent with the title of another, should silently bar that
title." *2 Wheat. 241, 288; Wood Lim. p. 623.* In *Heath* v.
*Pugh,* which was an action of ejectment, and the defence was
the statute of limitations (*3 & 4 Wm. IV. c. 27*), Lord Selborne,
speaking of the statute of limitations (*21 Jac. 1, c. 16*), said:
"The possession of the mortgaged land by the mortgagor, during
the subsistence of the security, and while the mortgagee did not
choose to take possession, was held, at law as well as in equity,
to be 'at the will,' or by the 'sufferance,' or 'permission' of the
mortgagee, under a 'tacit agreement' which the mortgagee might
determine at his pleasure. It was of the nature of the transac-
tion that the mortgagor should continue in possession. His
possession was rightful and not by wrong. He was entitled to
the rents and profits as long as he remained in possession; *mesne*
profits accrued due and received prior to action or demand could
not be recovered from him by the mortgagee. The former statute

of limitations (*21 Jac. 1, c. 16*) did not, under the circumstances of such a possession by the mortgagor, run against the mortgagee." *L. R. 6 Q. B. D. 345, 359.* A possession that was rightful and not by wrong in its inception and continuance could not become tortious and adverse, except by some act on the part of the mortgagor which indicated a disavowal of the relation of mortgagor and mortgagee.

A tenant in possession, recognizing the title of his landlord by the payment of rent, does not acquire title by adverse possession, no matter how long his possession may continue. By a parity of reasoning, a mortgagor who is in possession of mortgaged premises by sufferance or by the acquiescence of the mortgagee, paying interest on a mortgage, is not in under a possession which is adverse. The principle that underlies the whole of this subject is that the payment of rent by the tenant, in one case, and the payment of interest by the mortgagor in the other case, is a recognition of the rights of the landlord or mortgagee. The possession of the mortgagor by the sufferance or forbearance of the mortgagee, making payments on account of the mortgage debt, does not become adverse to the title of the mortgagee until the mortgagor has ceased to recognize the mortgagee's title by the non-payment of interest.

In *Blue* v. *Everett* the mortgage in question was made July 19th, 1872, securing the payment of a bond of the same date for $1,500, payable in one year. As was decided in the court of chancery, the last payment of interest by the mortgagor was more than twenty years before bill filed. A subsequent payment of interest claimed by the mortgagee was disallowed for want of proof, and the decision of the vice-chancellor on that question was not set aside in this court. There being no recognized payment of interest within twenty years, the bar of the statute arising from the lapse of time after the right of entry accrued was not removed.

The decision in that case established the doctrine that the statute of limitations was available in a suit in equity for the foreclosure of a mortgage, as well as in an action of ejectment, and that the right to a foreclosure ceased when the legal right of entry upon the lands mortgaged was barred. In delivering

Colton *v.* Depew.

the opinion of the court the learned justice, speaking of the payments of interest by a mortgagee, used this language: "At law the bar of the statute [of limitations] could not be obviated by payments made on account of the debt, for the mortgagor does not hold the land under the mortgagee, and the payments could not be deemed rent or in any sense the price of possession, but would be referred solely to the personal obligation held by the mortgagee." This language does not accurately express the legal principle which controls when such a payment is made by the owner of the mortgaged premises in its effect upon the statute of limitations. The mortgagee has two securities for the debt—the bond and the legal estate in the mortgaged premises. A payment on the debt may be made by the obligor on the bond or by the grantee of the mortgaged premises. Where the obligor has conveyed the premises his grantee has no interest in keeping alive the contract to pay contained in the bond. A payment of interest or part principal on the debt may be made by the obligor or by his grantee. If such payment be made by the owner, who was not the obligor, it would not at law remove the bar of the statute of limitations in an action against the latter. The possession upon which the statute attaches must be adverse. The mortgagee is not barred by the possession of his mortgagor paying interest. *3 Evans Stat. 229, note; 4 Kent 189.* The doctrine of the law with respect to title under the statute of limitations is that there has been a possession adverse to the owner of the legal title for twenty years. Whether possession is adverse within the purview of the statute is a question of fact, to be determined upon competent evidence concerning the character of the possession, whether permissive or hostile to the title of the real owner. A person may be in possession of property for a period longer than that mentioned in the statute, without paying rent or making any compensation for his occupation of the premises, and not be within the statute of limitations. Possession, to make the statute available, must be adverse for the full period prescribed by the statute.

The bond which accompanied the mortgage was made by Dole. The payments made in 1876 were made by the Weehawken Ferry Company, which was then the owner of the mortgaged premises.

At that time an action on the bond had been barred by the discharge of Dole in bankruptcy. It is inconceivable that the ferry company should have made these payments with a view to appropriate them to an obligation on which the company was not liable and that did not then exist, and not in satisfaction *pro tanto* of the mortgage, or in exoneration of the mortgaged premises. As was said by Vice-Chancellor Stevens in this case: "In the case in hand the payments are necessarily referable to the mortgage." The endorsement of payments on the bond is a matter of form. Payments of interest, whether made on the bond or on the mortgage, if made by the holder of the title to the mortgaged premises, were in exoneration of the mortgaged premises from so much of the indebtedness, and were plainly a recognition of the lien of the mortgage. On a bill to foreclose such payments would be credited on account of the mortgage indebtedness, for the payment of which a sale of the mortgaged premises would be decreed. In an action of ejectment a mortgagor in possession for more than twenty years, setting up the statute of limitations, would be debarred of such defence by proof that within twenty years he had recognized the mortgaged estate by the payment of interest on the mortgage indebtedness. Under such circumstances his title would not be adverse. The same principle must be applied in a suit in equity for the foreclosure of a mortgage.

The payment of interest by the Weehawken Ferry Company, the grantee in possession of the mortgaged premises, made on the 22d of December, 1876, is plenary evidence that up to that date the possession of the ferry company was not adverse to the mortgagee. When this payment was made the company was not holding adversely, and the twenty years, the period of adverse holding necessary to give title or to constitute a defence, either in an action of ejectment or in a foreclosure suit, had not elapsed when this bill was filed.

The question involved in this case is one of the utmost importance in this community. The moneyed institutions, controlling large amounts of capital, seek investments permanent as far as practicable. Such investments on mortgages are largely made in expectation that the money loaned will be neither paid

Colton *v.* Depew.

nor called in while the investment is satisfactory to both parties. A decision that would invalidate such mortgages of twenty years' standing, where the interest has been paid annually, would be disastrous.

The decree sustaining the complainant's right to a foreclosure should be affirmed.

The appeal by Colton presents the question of the rate of interest to be allowed. When the mortgage was given the legal rate of interest was six per cent. In 1866 the legal rate of interest was fixed at seven per cent., and that rate continued until 1878. On January 3d, 1871, Dole, who was then president of the ferry company, made an endorsement on the bond as follows:

"In consideration of the extension of time of the payment of this bond it is understood and agreed that the rate of interest from this date shall be seven per cent.

"NATHANIEL DOLE.    [Seal.]"

This endorsement by the president of the company does not appear to have been made in a manner which would bind the company. The vice-chancellor allowed interest at the rate of six per cent., disregarding the above agreement.

I shall vote to affirm the decree in both cases.

*For affirmance*—THE CHANCELLOR, CHIEF-JUSTICE, VAN SYCKEL, GUMMERE, LUDLOW, COLLINS, BOGERT, HENDRICKSON, ADAMS, VREDENBURGH, VOORHEES—11.

*For reversal*—None.