24 N.J. Super. 151 (1952)
93 A.2d 578
ABE KORB, PLAINTIFF-RESPONDENT,
v.
SPRAY BEACH HOTEL CO., A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT. SPRAY BEACH HOTEL CO., A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
ABE KORB, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 8, 1952.
Decided December 29, 1952.
*153 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
Mr. Franklin H. Berry argued the cause for appellant (Messrs. Berry, Whitson & Berry, attorneys).
Mr. David I. Stepacoff argued the cause for respondent.
*154 PFR CURIAM.
The judgment herein is affirmed on the opinion filed by Judge Smalley in the trial court, which follows:
"This litigation is presented by a vendee's complaint to recover part purchase-money, paid on a contract to convey land `with the buildings and improvements thereon erected'; and a counter-complaint by the vendor for specific performance of the contract. Counsel for the respective parties agreed to a consolidation of these suits to be heard by the court without a jury. The propriety of the consolidation is in accordance with such power vested in the court by Const. 1947, Art. VI, Sec. 3, par. 4.
The facts reveal that on August 11, 1951 the vendee, Abe Korb, attended a public auction sale on the premises of the Spray Beach Hotel, Beach Haven, Ocean County, in the State of New Jersey. Over the auction block, the premises giving rise to the controversy in question, was sold to the vendee on a bid of $60,000. Immediately upon the conclusion of the sale a contract of purchase was duly executed by the parties, and a deposit of $9,000 paid down by the vendee.
The property agreed to be conveyed was designated as `Parcels Nos. 1 and 3, Tract `A', on Plan of Property of Spray Beach Hotel Co. * * *, and reference to said plan is hereby made for the full and complete description thereof.'
Both parties concede that a reference to said plan would disclose two encroachments: (1) overlap into the bed of Atlantic Avenue along the easterly side thereof to the extent varying from 2.9 feet at the northerly end of the hotel building to one foot at the southerly end of the building, for a distance of 158 feet, and (2) overlap into the bed of 23rd Street along the northerly side thereof to the extent of .7 of a foot, for a distance of 43 feet.
It is the vendor's contention that the vendee was chargeable with knowledge of the encroachments by reason of the fact that a reference to the plan aforementioned would reveal the same and, therefore, having knowledge of the encroachments he could not repudiate the contract of purchase.
This contention fails to take into consideration a vital, significant and meaningful covenant openly arrived at, without fraud, between the parties, to wit:
`Title shall be good and marketable and such as will be insured at regular rates by Central Jersey Title Company, otherwise the Buyer shall be repaid the deposit money paid on account, without interest, and he shall also be reimbursed for the expenses he may have been put to for title searches and thereupon the Seller's liability hereunder shall absolutely cease.'
In Love v. Fetters, 98 N.J.L. 784 (E. & A. 1923), the court had under consideration a covenant similar to this. The principle of law laid down therein is controlling in the case sub judice. In interpreting this clause the court said the `plaintiff was not contracting for a *155 marketable title in the ordinary sense; he was stipulating for a title which the local company would insure, so that he could turn over the policy to a mortgagee or a purchaser.'
The parties herein stipulated that Exhibit P-1, introduced in evidence on behalf of the plaintiff Abe Korb, could be offered in evidence as the title report of the Central Jersey Title Company. In this title report, the title company, after alluding to the fact and measurements of the encroachments concluded: `* * * in our title policy we will make a specific exception that the title company will assume no liability and will make no guaranty that the building is entirely within the bounds of the insured premises and will specifically designate in the exception the extent of the overlapages into the street. In other words, the attitude of the title company is that they will not be responsible or assume any liability nor will they insure that the building lies entirely within the bounds of the land in question. This position was unequivocal, and found further expression when the president of the Central Jersey Title Co., called as a witness by the vendor, reiterated the fact that his company would insure the land but not the building.
Contracts whose performance is conditioned on the approval of third parties are not unusual. 57 A.L.R. 1322 recognizes the principle that a contract may properly contain a provision in effect obligating the vendor to convey such a title as a designated title insurance company will approve and insure.
Where no ambiguity exists in a contract it is the duty of the court, as a matter of law, to interpret the same. Grueber Engineering Co. v. Waldron, 71 N.J.L. 597 (E. & A. 1904); Stannard v. Shell Eastern, etc., Products Co., 117 N.J.L. 163 (E. & A. 1936); I. Hausmann [Hausman] & Sons, Inc. v. Central Home Trust Co., 118 N.J.L. 104 (E. & A. 1936); Decker v. [George W.] Smith & Co., 88 N.J.L. 630 (E. & A. 1915).
Furthermore, where the parties have said, by very plain words, what they meant, the court has no duty to perform other than to carry their meaning into effect. Bower v. Hadden Blue Stone Co., 30 N.J. Eq. 171 (Ch. 1878), affirmed 30 N.J. Eq. 340 (E. & A. 1878). In City of Camden v. South Jersey Port Commission, 4 N.J. 357 (1950), the Court stated: `The function of the Court is not to make contracts but rather to enforce them.' See too, Stover v. Hellyer, 68 N.J. Eq. 734 (E. & A. 1905).
The contract under consideration is clear in its meaning and intent. Neither of the parties contend any ambiguity; none is apparent. The plain purport of the covenant made by the vendor to give a title `good and marketable and such as will be insured at regular rates by Central Jersey Title Company,' does not permit an insurable title with exceptions or conditions therein. Neither are we justified in rendering the same meaningless by concluding that the vendee did not seek to receive the full benefit of the fruits of such a covenant. The intention of the vendor, spelled out from the specific verbiage under consideration, was clear and unmistakable. It agreed *156 to furnish the vendee with a title, good and marketable, which would be insured by the Central Jersey Title Company at its regular rates. Indeed, this intention finds strong support in the conduct of the vendor when it sought, and in fact obtained, ordinances from the municipality wherein the land was located vacating the encroachments. It obtained the vacating of one encroachment by ordinance passed on November 16, 1951; the other by ordinance passed on March 27, 1952.
The passage of these ordinances was inefficacious insofar as the rights of the vendee are concerned. The date for closing title was October 11, 1951. Under the stipulation of facts entered into by counsel for the parties it is uncontroverted that both under the explicit terms of the written contract in question and thereafter, but before the date of closing, both parties agreed that time was of the essence. Our courts have repeatedly held that where time is essential, and, by the terms of the contract time is made of the essence, prompt performance is necessary. Cases on this score are legion. See Barry v. Ruskin, 99 N.J. Eq. 730 (Ch. 1926); Wyatt v. Bergen, 2 N.J. Misc. 1169 (Ch. 1924); Doctorman v. Schroeder, 92 N.J. Eq. 676 (E. & A. 1921); Brinn v. Mennen Co., 5 N.J. Super. 582 (Ch. Div. 1949), affirmed 4 N.J. 610 (1950); Orange Society v. Konski, 94 N.J. Eq. 632 (Ch. 1923), affirmed 95 N.J. Eq. 254 (E. & A. 1923). When the vendee's attorney on his examination of title ascertained the existence of the encroachments, he by letter dated September 21, 1951, communicated this fact to the vendor's attorneys, advising them further that the title company refused to insure against these encroachments. On the day set for closing the vendee appeared at the appointed time set for the closing and promptly offered the balance of the purchase price. The request was made on behalf of the vendee for an insurable title satisfactory to the Central Jersey Title Company. No such title was forthcoming from the vendor. No such title was ever tendered by or on behalf of the vendor.
The failure or inability of a vendor to perform the contract according to its terms is fatal to such a vendor's suit for specific performance. The general rule has been stated by our courts to be as follows: one who seeks performance of a contract for the conveyance of land must show himself ready, desirous, prompt and eager to perform the contract on his part. Vandermade v. Appert, 125 N.J. Eq. 366 (Ch. 1939); Meidling v. Trefz, 48 N.J. Eq. 638 (E. & A. 1891). The rule is also stated in the following language: `In order to entitle one to a remedy of specific performance, it must be shown that everything has been done that is required to be done under the terms of the contract.' Wemple v. B.F. Goodrich Co., 125 N.J. Eq. 109 (Ch. 1939). See also Furman v. Clark, 11 N.J. Eq. 306 (Ch. 1857); Vacca v. Wilkens, 108 N.J. Eq. 331 (Ch. 1931); Kelleher v. Bragg, 96 N.J. Eq. 25 (Ch. 1924), affirmed 97 N.J. Eq. 547 (E. & A. 1925); Jaeger v. Ridgewood Park Estates, 120 N.J. Eq. 520 (Ch. 1936); Micheloni v. Troy Hills, Inc., 121 N.J. Eq. 117 (E. & A. 1936).
*157 Since the vendor breached the covenant pertaining to the delivery of such good and marketable title as would be insured by the designated title company, it was the right of the vendee to promptly repudiate the contract. This he did, thereby entitling him to the return of his deposit, together with interest from the date of closing as well as title search fees.
Specific performance will be denied the plaintiff, Spray Beach Hotel Co., and its complaint dismissed.
Judgment will be entered in favor of the plaintiff, Abe Korb, in the sum of $9,370 which includes interest and the stipulated search expense.
A form of judgment may be submitted."
We desire to add an explanatory word on one phase of the opinion.
It will be noted that after finding the language of the contract to be clear and unambiguous and the intention of the parties unmistakable, it is said that the subsequent conduct of the seller in seeking and obtaining elimination of the encroachments, furnishes evidence of the original intention of the parties. The fundamental rule is that where a written contract is in the state described it is considered the final and exclusive memorial of their intentions and parol evidence is not admissible to explain, alter or vary its terms. Central Hanover Bank & Trust Co. v. Herbert, 1 N.J. 426, 429 (1949); Winoka Village, Inc. v. Tate, 16 N.J. Super. 330, 333 (App. Div. 1951); Yentis v. Townsend, 104 N.J.L. 109 (E. & A. 1927); Castelbaum v. Wolfson, 92 N.J.L. 165 (E. & A. 1918); Russell v. Russell, 60 N.J. Eq. 282 (Ch. 1900), affirmed 63 N.J. Eq. 282 (E. & A. 1901).
As a consequence, under ordinary circumstances, evidence that the seller was successful in obtaining the passage of municipal ordinances vacating the street encroachments would not be admissible. Here such proof was made part of a stipulation of facts presented by the attorneys for the parties and no qualification was imposed upon its use as evidence. Our comment is explanatory and precautionary in character in order to avoid any seeming conflict with the parol evidence rule.