95 N.J. Super. 252 (1967)
230 A.2d 538
CHAIM MELCER, PLAINTIFF,
v.
BENJAMIN ZUCK, ROSE ZUCK AND R.G.B. CONSTRUCTION CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided June 2, 1967.
*254 Mr. Thomas J. Smith, Jr., for plaintiff (Messrs. Parsons, Canzona, Blair & Warren, attorneys).
Mr. Julius Braun for defendants Benjamin Zuck and Rose Zuck.
*255 LANE, J.S.C.
This action was instituted for specific performance of an agreement to sell real estate, to set aside a subsequent conveyance of the real property and, in the alternative, for damages for breach of the contract.
Defendants Zuck, having listed their property with a broker, signed an offer to purchase dated February 8, 1965, agreeing to sell the property owned by them known as Block 32, Lot 23 (the correct lot number was 22), in Jackson Township, to plaintiff for $29,750. The offer was obtained by the Zucks' broker. The lot did not front on any state, county or municipal road. It was vacant land through which the Toms River flowed, 70% under water, in some places as deep as five feet. The offer to purchase provided: "Access from main road to property guaranteed."
Subsequently, plaintiff's attorney, at the request of Mr. Zuck, drew an agreement of sale which was signed by the parties and dated March 13, 1965. This agreement provided for the closing on April 20, 1965, and further stated that "Sellers guarantee ingress and egress from the main road to the premises in question."
Plaintiff's attorney obtained a title report from Lawyers Title Insurance Corporation which showed, in addition to an outstanding mortgage, the following exceptions:

No. 7  Interest outstanding in the heirs of Aaron Burke.
No. 8  Possible outstanding dower interest of Annie Burke,
 widow of Aaron Burke.
No. 9  Possible outstanding dower interest of Charlotte Smith.
No. 10  Rights of ingress and egress to a public road will not
 be insured.

Because of these exceptions, there was no closing in April. Subsequently, plaintiff's attorney obtained an affidavit for the title company as a result of which the title company deleted exceptions Nos. 7, 8 and 9.
Subsequently, the closing was fixed for May 25, 1965. There was no closing at that time because plaintiff insisted upon an abatement of the purchase price due to the fact that *256 his attorney did not believe that defendants could guarantee ingress and egress from a main road. In addition, on May 25, 1965, when Mr. Zuck went to the office of plaintiff's attorney to close, defendants were in no position to close because Mr. Zuck did not have a deed and affidavit of title, nor was Mrs. Zuck present at the meeting to sign any papers.
Although the Zucks took the position that as of May 25, 1965 their agreement with plaintiff was at an end, they nonetheless continued to try to contact their real estate broker throughout the summer in connection with this transaction.
As a result of certain conversations between Mr. Zuck and persons apparently representing plaintiff, the closing was fixed for October 22, 1965 with an abatement of the contract price. On that date the Zucks appeared at the office of plaintiff's attorney and agreed to give a $1,000 abatement in the purchase price as an alternative to their guaranteeing an ingress and egress. While the closing statement was being prepared the Zucks refused to complete the closing because plaintiff's attorney insisted upon withholding funds sufficient to pay the mortgage on the premises and to pay a judgment against the Zucks that then appeared of record. The position of the Zucks was that they had sufficient monies and would make the payments themselves. Of course, this position on their part was untenable because the contract obligated them to convey by deed "free from all encumbrances." Washer v. Brown, 5 N.J. Eq. 81 (Ch. 1845); 20 N.J. Practice, § 1674.
Subsequently, the property was sold to R.G.B. Construction Co., Inc., for $40,230 by an agreement dated November 5, 1965. In that agreement there was a specific reference to ingress and egress as follows:
"It is understood and agreed by and between the parties hereto that the Seller has made no representation with regard to any right of ingress or egress to the property hereinabove described and that the Seller agrees to convey and the Purchaser agrees to accept whatever rights the Seller may have with regard to ingress and egress."
*257 At the time of the contract between plaintiff and the Zucks, the value of the property was between $40,000 and $45,000. The agreement to sell to R.G.B. Construction Co., Inc., establishes the value as of October 22, 1965 at $40,230.
There was nothing in the contract or the offer to purchase that required the Zucks to provide a right of ingress and egress that would be insurable by a title insurance company. It is admitted that the title was not unmarketable because of the question as to ingress and egress. In Love v. Fetters, 98 N.J.L. 784 (E. & A. 1923), the court pointed out that there is a difference between a title that is marketable in the usual sense and a title that a title company would insure. See also Korb v. Spray Beach Hotel Co., 24 N.J. Super. 151 (App. Div. 1952). The question is whether the Zucks were justified in not closing on October 22.
Defendants adduced proof that there were at least seven means of ingress and egress from a main road to the premises in question. Most of these ways were over vacant land. There was no proof that any easement had been established over any of the properties through which these ways went. See A.J. and J.O. Pilar, Inc. v. Lister Corp., 22 N.J. 75 (1956); Poulos v. Dover Boiler & Plate Fabricators, 5 N.J. 580 (1950).
In Plaza v. Flak, 7 N.J. 215 (1951), the court discussed in some detail the acquisition of an easement by prescription. It said:
"At an early date, it was laid down that the doctrine of prescription is based upon an analogy to the statutes of limitation which are concerned with adverse possession of land, although originally stemming from a theory or legal fiction of lost grant, which latter theory is more or less in disrepute today, and is dependent upon the same principles as adverse possession. Cobb v. Davenport, 32 N.J.L. 369, 385, 387 (Sup. Ct. 1867). This is likewise the general view. 17 Am. Jur., Easements, sec. 55; 1 Thompson on Real Property, (Perm. Ed., 1939), sec. 415, pp. 677-680; Minor on Real Property (2d ed. Ribble, 1928), Vol. II, sec. 984; Commentaries on Law of Real Property (Walsh, 1947), Vol. II, sec. 238; Burby on Real Property (1943), sec. 68. 16 Harv. L. Rev. 438, 439.
*258 Therefore, there must exist a user that is adverse, hostile, continuous, uninterrupted, visible and notorious. Cobb v. Davenport, supra, p. 385; DeLuca v. Melin, 103 N.J.L. 140, 144 (E. & A. 1926). This must be a continuing, open, visible and exclusive user, hostile, showing intent to claim as against the true owner, and must be under a claim of right with such circumstances of notoriety as that the person against whom it is exercised may be so aware of the fact as to enable him to resist the acquisition of the right before the period of prescription has elapsed. Poulos v. Dover Boiler & Plate Fabricators, 5 N.J. 580, 588 (1950); Carlisle v. Cooper, 21 N.J. Eq. 576, 596 (E. & A. 1870)." (at pp. 219-220)
The presumption in this case is that the use of the ways into the Zuck property was permissive and, therefore, an easement would not have been created. From the evidence adduced in this case, the property owners over whose lands the ways ran could at any time have blocked them off. The fact that on a road map of the township certain ways apparently leading to the property are shown as wagon roads does not assist the Zucks.
The other claim by the Zucks as to ingress and egress to the property is over streets that were laid out on subdivision maps filed for Lakewood Terrace in 1907. These streets would run to the Zuck property. However, the mere filing of the map does not give the owner of the Zuck land the right to use the streets. In Highway Holding Co. v. Yara Engineering Corp., 22 N.J. 119 (1956), the court stated:
"It is settled that mere dedication of streets by a filed map or a reference in a deed to such map, and the opening of the streets as laid out, does not constitute them public highways, unless or until such streets are in some way accepted by public authorities or they are used by the public generally for 20 years as highways." (at p. 127)
There is no proof in this case that there was ever any action taken by the municipality to accept the streets shown on the filed map, and the proof is clear that the streets in fact had not been constructed.
The Zucks could not honor their guarantee of ingress and egress from a main road to their premises.
*259 It follows, therefore, that the Zucks should have conveyed the property on October 22, in accordance with the contract and their subsequent agreement as to an abatement in the contract price. Crane v. DeLuca, 5 N.J. Misc. 320, 136 A. 349 (Sup. Ct. 1927), affirmed o.b. 104 N.J.L. 167 (E. & A. 1927); Kietrys v. Cregar, 23 N.J. Misc. 273, 43 A.2d 810 (Sup. Ct. 1945).
The Zucks contend that plaintiff should be barred by the doctrine of laches. That doctrine might apply to the cause of action for a specific performance but it would not bar a cause of action for breach of contract until the expiration of the time limit set forth in the statute of limitations for such actions. The complaint has already been dismissed under N.J.S.A. 46:21-3 on a motion for summary judgment as to the subsequent grantee, R.G.B. Construction Co., Inc. Specific performance, therefore, cannot be ordered. The complaint was timely filed to recover damages for breach of the contract. Although the statute of limitations does not apply in its terms to courts of equity, proceedings in equity to enforce a legal right are within the spirit and meaning of the statute. Colton v. Depew, 60 N.J. Eq. 454 (E. & A. 1900); 53 C.J.S., Limitation of Actions, § 62, p. 1023; 92 C.J.S., Vendor and Purchaser, § 585.
Defendants also contend plaintiff should be barred by the doctrine of unclean hands. This contention is based upon the fact that none of the deposit monies were paid over to Zuck. The plaintiff paid the deposit monies to the Zucks' real estate agent, who then held them. It may very well be that the action of the real estate agent in failing to pay the deposit monies over to the Zucks was a breach of his duty to them. That action, however, would not form the basis of barring plaintiff for unclean hands. Defendants also argue as a basis for the application of the unclean hands doctrine that at some time subsequent to the contract, the subject matter of this suit, plaintiff obtained an interest in a piece of property which would have given access to a main highway from the Zuck property. The testimony shows that plaintiff's *260 interest in such land was not obtained until August 1966. There is no showing here of any fraudulent conduct on plaintiff's part that vitiates in important particulars the situation in respect to which judicial redress is sought. Untermann v. Untermann, 19 N.J. 507 (1955).
In regard to the damages to which plaintiff is entitled, defendants contend that he is limited by a provision in the agreement between the parties which stated:
"In the event title to the above described premises is found to be unmarketable upon an examination thereof, the only obligation of the seller shall be the return of the deposit and all monies of the purchaser paid unto the seller; providing, however, that the seller will reimburse the purchaser for legal expenses incurred in the examination of the title to the hereinabove described premises which, however, shall not exceed the sum of $150.00; and upon receipt of the same by the purchaser, the rights and liabilities of the parties hereto, their respective heirs, executors, administrators or assigns, shall cease and terminate and this contract then to become null and void."
It is inconceivable that under the circumstances of this case plaintiff should be limited by that provision. Defendants had it within their power to make the title marketable by allowing plaintiff's attorney to withhold sums sufficient to pay the mortgage and the judgment. Such is the normal practice in real estate transactions. By failing so to act, defendants should not be allowed to limit the amount of damages to which plaintiff is entitled.
Plaintiff is entitled to recover the deposit money, the reasonable expenses of examining the title and the loss of his bargain, which would be the difference between the market price of the property and the purchase price provided for by the contract. Ganger v. Moffett, 8 N.J. 73 (1951). Here the deposit was held by the broker and subsequently turned over to plaintiff's attorney, so that plaintiff has already recovered that back. There was no proof as to the cost of examining the title. The loss of the bargain is the difference between $28,750, the contract price as abated, and $40,230, the sales price to R.G.B. Construction Co., Inc. Plaintiff is, therefore, entitled *261 to a judgment against the Zucks in the amount of $11,480 with interest from October 22, 1965.
Judgment will be presented within ten days, consented to as to form in accordance with R.R. 4:55-1, embodying the views set forth herein.