**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0257-23

FIORELLA PASSANO,

    Plaintiff-Respondent,

v.

JEAN VICTORIA
MARTIN-DELOACH and
ABU M. DELOACH,

    Defendants-Appellants.

_____

        Submitted September 15, 2025 – Decided October 16, 2025

        Before Judges Walcott-Henderson and Bergman.

        On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. DC-005774-21.

        Jean Victoria Martin-DeLoach and Abu M. DeLoach, appellants pro se.

        Fiorella Passano, respondent pro se.

PER CURIAM

In this landlord-tenant matter, defendant-tenants Jean Victoria Martin-DeLoach and Abu M. DeLoach appeal from an August 17, 2023 judgment entered against them in the amount of $16,979.40, in favor of plaintiff-landlord Fiorella Passano, following a bench trial. Defendants contend the court erred by disallowing certain evidence and testimony at trial, specifically regarding their contributions and enhancements to the rental property and emotional damages. Discerning no error in the court's decision, we affirm.

The record, including pro se briefs and submissions, establishes that in March 2018, plaintiff rented her single-family home at 54 Lyons Avenue, Newark, to defendants pursuant to a written month-to-month rental agreement ("Agreement"). Defendants paid a $3,000 security deposit and took possession of the property. The monthly rent was set at $2,000.

The Agreement provided the property would be rented "as is," with "NO STRUCTURAL CHANGES" to be made to the interior or exterior of the property, "UNLESS NEEDED or APPROVED BY THE LANDLORD." It is undisputed the rental property needed various repairs as evidenced by the exclusion of the garage from use due to "SAFETY REASONS" and the following disclosures: "Disclosure of Information on Lead-Base Paint and/or Lead-Base Paint Hazard[,]" and that the

            * Previous tenants had a roach and mice issue. A year contract with pest exterminator is active [until] October 2018. They will come on a monthly basis for treatment. It is the [defendant's] responsibility to work with exterminators on appointments for monthly treatment of the [p]roperty, by letting them enter the premises. If pest control issues worsen, [defendants] must notify landlord immediately. If it is found that tenants failed to notify [l]andlord for worsening condition of pest issues, it will be the responsibility of the [t]enants to pay for exterminator costs.

An addendum to the Agreement also provided:

            [DEFENDANTS] AGREE TO FINISH PAINTING THE LIVING ROOM . . . ALSO FINISH REPAIRS AND PAINTING IN THE KITCHEN. [DEFENDANTS] AGREE TO CLEAN GUTTERS AND REPAIR BENT GUTTER SECTION LOCATED IN THE FRONT OF THE HOUSE. THIS AGREEMENT IS MADE IN EXCHANGE TO A MOVE IN DATE OF MARCH 25, 2018.

Lastly, the fees and costs provision stated:

            IN ANY ACTION OR LEGAL PROCEEDINGS TO ENFORCE ANY PART OF THIS AGREEMENT, THE PREVAILING PARTY SHALL RECOVER REASONABLE ATTORNEY FEES AND COURT COSTS.

Property inspection checklists dated July 9, 2018, February 25, 2019, August 12, 2019, and February 19, 2020, were executed per the Agreement, documenting the condition of the property.

3

Defendants ceased paying rent in August 2020. Thereafter, Plaintiff filed a complaint in the Special Civil Part in April 2021 for non-payment of rent from August 2020 to June 2021.[1] Defendants counterclaimed for breach of contract, unjust enrichment related to repairs and improvements made to the property, and consumer fraud.

A two-day trial ensued with plaintiff and defendants represented by their respective counsels.[2] Plaintiff testified that the early possession of the property by defendants was permitted on the condition they complete specified repairs and improvements at their own expense. She confirmed defendants undertook several agreed-upon repairs and improvements, and that the property was in good condition except for the noted areas and the garage, which was off-limits to defendants under the Agreement.

Over the ensuing two years, defendants made some unknown and unauthorized repairs to the property and ceased to pay rent in August 2020. Plaintiff calculated that defendants owed outstanding rent as follows: partial rent from September 2020 in the amount of $45.40; $2,000 per month from

---

[1] Neither plaintiff's complaint nor defendants answer are in the record before us.

[2] The trial took place on non-consecutive dates in June and August 2023.

October 2020 to June 2021; and late fees of $100 per month, totaling $900. Plaintiff explained that defendants advised her in August that they would not be paying rent for the months of August or September and she could apply their security deposit to cover those months. Plaintiff allowed defendants to apply their security deposit toward rent for August and September 2020, crediting them $3,514.80, inclusive of earned interest.[3] No other rental payments were received from defendants.

Plaintiff further testified she made multiple unsuccessful attempts to conduct routine inspections of the property pursuant to the Agreement to no avail. She was only able to gain access to the property on June 8, 2021, at which time it was in disrepair with a foul odor emanating from inside. Plaintiff found the front door open, defendants had vacated the premises and there were squatters inside, and a later inspection revealed that defendants had removed appliances and their furniture. Plaintiff contacted police and subsequently changed the locks.

Defendant Jean testified that after signing the Agreement, the property remained in a state of disrepair, prompting her and her husband to incur

---

[3]  Plaintiff applied a total of $3,514.80 to defendants' outstanding balance, inclusive of the security deposit and applied earned interest.

A-0257-23

substantial costs to make necessary repairs and improvements.[4] According to Jean, much of the repairs were completed by contractors, she routinely paid in cash. Defendants called no other witnesses to testify regarding any repairs and no documentary evidence, including cancelled checks or credit card statements showing payments had been made was submitted, and no witnesses corroborated these expenditures. The court allowed Jean to testify regarding repair costs for the plumbing, toilets, and ceiling, but excluded receipts defendants proffered as inadmissible hearsay. The court did not find Jean's testimony regarding several of the alleged costs of repairs and payments to contractors to be credible. Jean admitted repairs were performed because defendants expected to purchase the property—a sale which did not materialize. The property was eventually sold to a third party, and defendants later purchased another home.

Jean also testified that she notified plaintiff of several issues with the home, usually via phone and not in writing. She confirmed that repairs were generally paid for in cash and that she "never sent the bills [to plaintiff] . . . because [they] were making repairs." Jean also testified that she never told

---

[4] We refer to Jean by her first name here because the parties share the same surname, intending no disrespect.

A-0257-23

plaintiff they would not pay rent, stating "we always paid rent, we never had an issue paying rent . . . [and we] just made the repairs."

At the conclusion of the testimony and closing arguments, the court issued an oral decision and judgment in plaintiff's favor and awarded outstanding rent and costs. In reviewing the express language of the Agreement, the court consider it significant that the property was "being leased as-is" and that there was no question anything defendants paid for lawn care maintenance and bug remediation was their responsibility. The court further found that although the "security deposit wasn't handled in the way it was supposed to be," plaintiff gave the appropriate credit to defendants.

The court also found defendants were motivated to undertake various other repairs because they intended to purchase the property from plaintiff, but rejected defendants' claims they had an oral agreement with plaintiff to purchase the home and instead relied on the four corners of the parties' Agreement.

Regarding defendants' counterclaim for the value of the improvements made to the property, the court reasoned:

> I understand the [d]efendant's -- thought that she was . . . improving the property because she thought that she was going to end up staying there. She had no right under the lease, though, to do that. . . . She could improve but she had no right to then get the money back

A-0257-23

when she left and [plaintiff] had no obligation to keep her there or to sell the property to her.

The court found that the alleged amounts that were paid and the cash payments Jean alleged had been made to contractors "were so far-fetched." The court concluded "from [Jean]'s testimony," that the total outstanding amount of rent, including late fees, was $20,979.40 and awarded a credit to defendants of $4,000 for the repairs to the garage. The court stated, "I do feel the property was enhanced and improved and that [plaintiff] had reason to know about that and they seemed to have not done it in a timely fashion because defendant wanted to use the garage." The court entered judgment for plaintiff in the amount of $16,979.40. Defendants appealed.

We review final determinations made by the trial court "premised on the testimony of witnesses and written evidence at a bench trial, in accordance with a deferential standard." D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013). Our Supreme Court has emphasized that appellate review of a cold record cannot replace the trial court's ability to observe live testimony. See Balducci v. Cige, 240 N.J. 574, 595 (2020). We therefore defer to credibility determinations, since the trial judge "hears the case, sees and observes the witnesses, and hears them testify." City Council of Orange Twp. v. Edwards, 455 N.J. Super. 261, 272 (App. Div. 2018) (quoting Gnall v. Gnall, 222 N.J. 414, 428 (2015)).

8

Significantly, we will not disturb the trial court's findings unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Griepenburg v. Township of Ocean, 220 N.J. 239, 254 (2015) (quoting Rova Farms Resort v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

Before us, defendants argue trial counsel "failed to meet the expected standard of professionalism and competence" based on her inadequate courtroom demeanor, unprofessional behavior and disrespect towards the judge and opposing counsel. Defendants maintain the trial counsel's inability to articulate arguments clearly, frequent interruptions, and inadequate preparation disrupted the proceedings and "move the atmosphere from negative to prejudicial, suggesting bias against [them]."

Defendants next argue the court erred by denying Abu[5] an opportunity to testify about the "emotional stress" he endured because of plaintiff's conduct, and receipts he collected repairing and maintaining the house, which was critical to their case. Lastly, they maintain that "[a] major contradiction took place when the judge accepted one receipt which was also paid in cash denying all others

---

[5] We use Abu's first name here to differentiate between defendants, intending no disrespect.

A-0257-23

paid in cash," presumably referring to Jean's testimony regarding the costs of repairs to the garage.

We first address defendants' claims trial counsel's "deficiencies" require us to "take appropriate measures to rectify the injustices served." We glean from this argument that defendants are asserting an ineffective assistance of counsel claim.

Here, although the trial record includes instances of trial counsel arguing with the court over its evidentiary rulings, expressing disagreement, and even discourteous comments, the court based its judgment on competent evidence, including the parties' Agreement, and the testimony of plaintiff and Jean. As fully set forth below in this opinion, the court reasoned that defendants ceased paying rent in August 2020 but remained on the property and credited them for some, though not all repairs and improvements. Thus, even if counsel's performance fell below acceptable standards, defendants' arguments fail because they do not point to any competent evidence establishing a reasonable probability that but for trial counsel's alleged errors, the result of the trial would have been different. Therefore, counsel's alleged deficient performance is not a basis for reversal of the court's judgment.

A-0257-23

We similarly reject defendants' remaining arguments and affirm the court's judgment substantially for the reasons articulated by the court. The court's conclusion that plaintiff was entitled to judgment representing the non-payment of rent is well-supported by the record. There is no dispute that defendants failed to pay any rent post-August 2020 and advised plaintiff to deduct rent from their security deposit, yet remained on the property for approximately one year later. The security deposit, however, proved insufficient to cover the outstanding balance and the court correctly calculated the amount due after applying the $3,000 security deposit and accrued interest. Accordingly, the court's holding that plaintiff is entitled to outstanding rent is unassailable and will not be disturbed.

Further, defendants offer no support for their contention the repairs and improvements they undertook must be credited to them as rent. In our view, the court properly determined defendants failed to present competent evidence they paid contractors to undertake repairs or that they were entitled to reimbursement for various repairs based on receipts. We further note that Jean herself testified that she had never requested credit from plaintiff for any repairs made, nor did she provide plaintiff with any proof of payments they allegedly made to contractors.

11

Lastly, we observe no error in the court's conclusion that defendants failed to establish there was an agreement to purchase the property. The parties' 2018 Agreement contained no such terms and the record is devoid of any evidence that plaintiff agreed to sell the property to defendants as alleged. We have long held the parol evidence rule precludes evidence of prior or contemporaneous oral agreements or negotiations that alter, vary, or contradict the terms of a final written expression of a contract. Korb v. Spray Beach Hotel Co., 24 N.J. Super. 151, 157 (App. Div. 1952). This rule is premised on the principle that the writing, in this case the 2018 Agreement, is intended as the complete and exclusive statement of the parties' agreement. Moynihan v. Lynch, 250 N.J. 60, 91 (2022). Courts will permit extrinsic evidence to interpret ambiguous contractual terms, but such evidence cannot be used to modify or contradict clear, unambiguous provisions. Garden State Plaza Corp. v. S.S. Kresge Co., 78 N.J. Super. 485, 496 (App. Div. 1963). Thus, absent any showing of ambiguity in the written Agreement, the court properly conclude the parties are bound by the four corners of their Agreement.

Further, the court did not err in denying defendants' claim for emotional distress damages absent any proofs. See Buckley v. Trenton Saving Fund Soc., 111 N.J. 355, 366 (1988) (holding that damages for emotional distress require

competent evidence, not mere allegations). Defendants argue plaintiff's "unfounded and dramatic accusations of aggression and violence against [Abu] inflicted unimaginable stress." However, the record is devoid of any documentary or other evidence regarding Abu's claim of emotional distress. In defendants' pro se brief, they assert only that "[a]t trial, greatly under pressure [and] away from his employment[,] [Abu] was forced to leave to go back to work," suggesting that the court did not permit Abu to testify. From the record, we surmise that Abu did not testify because he needed to return to work. Furthermore, we observe no abuse of discretion on the part of the court for concluding the trial in Abu's absence given that on the second day of trial, he had to return to work. Under N.J.R.E. 611, trial courts have broad discretion to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence" in part to avoid wasting time.

Because the court based its findings on credible and largely undisputed evidence in the record, we affirm its judgment of $16,979.40 in plaintiff's favor.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division